UNITED STATES of America, Appellee,

v.

George A. RIGGS, Appellant.

No. 75–1753.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1976.

Decided June 14, 1976.

Charles G. Bernstein, Baltimore, Md. [court-appointed counsel], for appellant.

Marsha A. Ostrer, Asst. U. S. Atty., Baltimore, Md. (Jervis S. Finney, U. S. Atty. and Leonard M. Linton, Jr., Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, BUTZNER and FIELD, Circuit Judges.

WINTER, Circuit Judge:

George A. Riggs appeals the district court's affirmance of his conviction by a United States Magistrate of larceny of bank funds under $100 in violation of 18 U.S.C. § 2113(b) and (f). Riggs asserts as errors in his conviction: (1) that the crime requires proof of a specific intent to deprive the bank of property permanently, and that there was insufficient evidence to permit the trier of fact to find beyond a reasonable doubt that he possessed such an intent; (2) that his consent to a search of his wife's car, in which the FBI found money which had been missing from the bank, was not voluntary under *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and that therefore the money should not have been admitted into evidence; and (3) that the FBI did not respect his assertion of his right under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to cut off questioning, so that the confession he subsequently made was also inadmissible. We find no merit in any of these arguments and affirm.

I.

In *United States v. Rogers*, 289 F.2d 433 (4 Cir. 1961), we held that 18 U.S.C. § 2113(b) embodies the element of common law larceny that the defendant must have had the specific intent to deprive the true owner of his property permanently. Thus, to sustain the conviction here, we must find

evidence from which the trier of fact could have found beyond a reasonable doubt that Riggs had such an intent. Even though a person will ordinarily be deemed to have intended to do that which he did, the fact that Riggs took the money in the first place will not alone suffice; such an interpretation would read the specific intent requirement out of the crime.

■ It was Riggs' contention that he intended to return the money to the bank, where he worked as a night janitor, but was prevented from doing so because of his apprehension by the FBI. Initially, Riggs asserts that the government is bound by an exculpatory statement to this effect in his confession. We disagree. The government does not vouch for the credibility of a statement by introducing it, *United States v. Norman*, 518 F.2d 1176 (4 Cir. 1975), and the exculpatory portion of Riggs' confession was inherently incredible and could be disbelieved.

■ Viewed in the light most favorable to the government, the record contains sufficient evidence to show that Riggs intended permanently to deprive the bank of its money. Twenty-four hours after the money was taken, it had not been returned, but rather had been placed in Riggs' wife's car, presumably for the purpose of concealment. When the FBI contacted Riggs by telephone to arrange an interview, he made no mention of the money. At a subsequent FBI interview, after being informed of his *Miranda* rights, Riggs affirmatively denied any knowledge of the money. While Riggs argues that his silence during a custodial interrogation cannot be used to establish an element of the crime, citing *United States v. Anderson*, 162 U.S.App.D.C. 305, 498 F.2d 1038, 1040–44 (1974), aff'd, *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), the telephonic conversation was not custodial, and in the interview Riggs did not remain silent. Thus, we deem the requisite specific intent sufficiently proved.

## II.

During the course of his interrogation of Riggs, an FBI agent told Riggs he would ask him for a "release" to search his car, and then related how another individual whom the agent had interviewed at some previous time had confessed when confronted with a request for a "release," since the stolen money had been hidden in the car. At this point, Riggs confessed, and led the agent to his wife's car, where the money was found.

■ Riggs argues that his consent to the search was not voluntary under the totality of the circumstances test articulated in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). We are not persuaded. The agent did little more than ask Riggs for his consent to search. Even if the agent's further statements could be viewed as coercive with respect to a request to search *Riggs'* car, the consent Riggs gave was consent to search his *wife's* car. The fact that Riggs voluntarily led the FBI to the true hiding place of the money strongly suggests that his consent was the product of free and unrestrained choice.

## III.

At the beginning of the FBI interview of Riggs, the FBI agent informed Riggs of the general nature of the crime being investigated and of his rights under *Miranda*. Riggs then made the following statement:

> I don't know anything about the $1,000; I didn't take the money, and I have no information to furnish the FBI with regard to the money . . . . What happens now?

The agent then continued talking to Riggs. The agent interrogated him about his employment, his salary, and his debts. Riggs was asked to sign a release to enable the agent to get information about Riggs' loans; Riggs agreed. When Riggs was asked to sign a release for the agent to search his vehicle, more conversation ensued in which the agent related his experience with another defendant to which we have referred, and eventually Riggs confessed. He contends that his confession was inadmissible because it was the product of continued interrogation after he asserted his right to have questioning cease.

**1222**

The opinion in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), deals with this point:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. *Id.* at 473, 86 S.Ct. at 1627.

While the Supreme Court has recently indicated that under some circumstances the police may again attempt to question a suspect who has asserted his *Miranda* right to remain silent, *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the special circumstances found relevant in *Mosley* do not exist here. Thus, if in fact Riggs indicated that he wished "to remain silent," his confession, under *Miranda*, would have been inadmissible.

■ But we conclude that *Miranda* is inapplicable. On its face, Riggs' statement that he had "no information to furnish to the FBI with regard to the money" is susceptible of two interpretations. It could be regarded as an attempt to cut off questioning under *Miranda*, as Riggs contends, especially since it came shortly after the defendant was informed of his *Miranda* rights by the FBI. On the other hand, it could also be regarded as a mere declaration of ignorance not precluding further cooperation with the investigation, as the government contends. The magistrate and the district court both necessarily concluded that under all of the circumstances of this case the latter interpretation was more plausible. This conclusion is a finding of fact to which we think the not clearly erroneous rule is applicable, and we cannot say that the lower courts' resolution of this issue was clearly erroneous. Therefore, we conclude that Riggs' confession was not taken in violation of his fifth amendment right to remain silent, and was properly considered against him.

■ We add a note of caution. In a case such as this, where a suspect makes a statement which arguably amounts to an assertion of his *Miranda* rights and the interrogating agent recognizes that the statement is susceptible of that construction,* his questioning with regard to the crime he is investigating should immediately cease and he should then inquire of the suspect as to the correct interpretation of the statement. Only if the suspect makes clear that he is not invoking his *Miranda* rights should substantive questioning be resumed. Such a practice could well save the government's case and the admissibility of the suspect's statement where a suspect's ambiguous statement might well be interpreted to be an assertion of *Miranda* rights.

*AFFIRMED.*

---

\* We do not foreclose the possibility that, in the instant case, Riggs' statement, "I have no information to furnish the FBI with regard to the money" was said with such intonation that, in its context, the agent reasonably understood it to be a denial of guilt rather than an assertion of the right to remain silent. Indeed, from the cold record, we would so understand it.