174 N.J. Super. 14 (1980)
415 A.2d 351
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID O. FUSSELL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1980.
Decided May 6, 1980.
*16 Before Judges SEIDMAN, MICHELS and DEVINE.
David E. Thomas argued the cause for appellant (Stanley C. Van Ness, Public Defender, attorney; Stanford M. Singer, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Degnan, Attorney General of New Jersey, attorney for respondent (Thomas A. Penn, Deputy Attorney General, of counsel and on brief).
The opinion of the court was delivered by MICHELS, J.A.D.
Defendant David O. Fussell was convicted by the trial judge sitting without a jury of entering with intent to steal (N.J.S.A. 2A:94-1), armed robbery (N.J.S.A. 2A:141-1 and N.J.S.A. *17 2A:151-5), atrocious assault and battery (N.J.S.A. 2A:90-1) and assault with an offensive weapon (N.J.S.A. 2A:90-3), and was sentenced to consecutive and concurrent State Prison terms aggregating 18 to 25 years. Defendant appeals.
The critical issue raised is whether defendant's confession was properly admitted into evidence. We conclude that since the State did not meet its burden of establishing that defendant waived his right to counsel prior to his taped confession, the introduction of that confession violated the rights afforded defendant under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
A review of the facts is helpful to an understanding of our decision. In the early morning hours of March 12, 1976 two Camden police officers, in response to a call, entered a home on the 1200 block of Kenwood Avenue in Camden, New Jersey. They found an elderly woman lying on a bed, bleeding from the head and moaning. Her skull had been fractured and she had been stabbed in the leg. She was unable to speak or identify her assailant. Shortly thereafter, an ambulance arrived and the injured woman was taken to a hospital. Defendant, who resided in the neighborhood, was at the scene and asked the police officers if he could assist or help in any way, but was told that it was not necessary. Defendant then went to the hospital and inquired as to the woman's condition. The police officers observed defendant and became suspicious when they noticed a red substance on his pants. Defendant claimed that it was motor oil. While at the hospital defendant was also observed paying for coffee with crisp silver certificate dollar bills. Earlier, similar silver certificates had been observed by the police in the woman's bedroom.
Later that morning defendant accompanied the police officers to police headquarters. While the record is not entirely clear as to why defendant accompanied the officers, he was not under arrest at the time, and ostensibly he went there to aid in the investigation of the crime. At police headquarters defendant *18 met Detective Clark who noticed that defendant had what appeared to be blood stains on his pants. Defendant stated that the blood was from helping the woman into the ambulance. After Detective Clark was informed that the defendant did not help carry the woman into the ambulance, he advised defendant of his Miranda rights. Defendant then was asked to empty his pockets and he did so, revealing two silver certificate dollar bills and three sets of key chains. Defendant put these articles back in his pocket and went to the bathroom. Upon returning, defendant was again asked to empty his pockets and this time had only two sets of keys. The other set was found later underneath the toilet. A subsequent search of defendant's automobile revealed a pair of white gloves with blood stains under the front seat. These gloves were shown to defendant, who responded that "You're getting me tied up, aren't you." Thereafter the police officers search defendant's home.
While the search was being conducted, defendant, who remained at police headquarters, approached Lieutenant Michalak and asked to speak to him in private about the incident. Defendant and Michalak went to the latter's office, where Michalak against informed defendant of his Miranda rights. Thereupon defendant confessed to the crimes. Michalak asked defendant if he would make a formal statement and defendant agreed. According to the State's proofs, when Detective Clark returned to police headquarters he informed defendant that his attorney (whom Clark had met at defendant's home during the search) was on his way to police headquarters. Even though defendant's attorney had not arrived at police headquarters, defendant agreed to give Clark a statement, and Clark commenced the interrogation. The following is an excerpt of the pertinent questions and answers:
Q. David, before going any further I like to read your statement of rights to you, before we ask you any questions it is my duty to advise you of your rights. Do you understand that?
A. Un huh.

*19 Q. You have the right to remain silent, do you understand?
A. Yes.
Q. Anything you say will be used against you in a court of other proceedings, do you understand?
A. Yes.
Q. You have the right to counsel, consult an attorney before making any statement or answering any questions and you may have him present with you during questioning. Do you understand?
A. Yes.
Q. You may have an attorney appointed by the courts to represent you if you can not afford or otherwise obtain one, do you understand this?
A. Yes.
Q. If you desire to answer questions now with or without a lawyer, you still have the right to stop the questioning at anytime or to stop the questioning for the purpose of consulting a lawyer. Do you understand this?
A. Yes.
Q. However, however, you may waive the right to advice of counsel and your right to remain silent and you may answer questions or make a statement without consulting a lawyer, if you so desire. Do you understand this?
A. Yes.
Q. Is it your desire to give a statement without the assistance of a lawyer?
A. I would like to wait for legal counsel after taking, I would like him to read the statement before I answer.
Q. Don't you want to give us this statement?
A. Sure, I'll give you a statement.
Defendant then confessed to the crimes, which confession was recorded and transcribed.
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court laid down the rule applicable in cases of this kind.
Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, [or] intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.

........

*20 If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U.S. 478, 490, note 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977, 986. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, [146 A.L.R. 357] (1938), and we re-assert these standards as applied to in-custody interrogation. [384 U.S. at 444-445, 475, 86 S.Ct. at 1612, 1628, 16 L.Ed.2d at 706-707, 724; emphasis supplied]
We are firmly convinced that the trial judge erred in holding that the State met its heavy burden of establishing that defendant waived his right to counsel prior to giving his taped confession. The proofs clearly belie such a finding. While defendant was apprised of his Miranda rights on several occasions, he did not explicitly or unequivocally waive his right to counsel before his taped confession was obtained. Waiver requires not merely comprehension of a suspect's rights, but also an intentional relinquishment of them. Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424, 440 (1977). The simple fact is that interrogation did not cease after defendant said to Detective Clark that "I would like to wait for legal counsel after taking, I would like him to read the statement before I answer." The continued interrogation concerning defendant's desire to make a statement in the face of such a request clearly violated the Miranda admonition that "If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning." 384 U.S. at 444-445, 86 S.Ct. at 1612, 16 L.Ed.2d at 707. Furthermore, defendant's earlier waiver of his right to counsel is of no moment. As noted in Miranda, "the mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." 384 U.S. at 445, 86 S.Ct. at 1612, 16 L.Ed.2d at 707.
*21 While defendant's request for counsel may have been somewhat ambiguous, nevertheless we deem it to have been a sufficient assertion of his right to counsel to have required Detective Clark to stop any further substantive interrogation until it was clearly determined that defendant desired to proceed without counsel. See United States v. Riggs, 537 F.2d 1219, 1222 (4 Cir.1976); United States v. Chansriharaj, 446 F. Supp. 107, 108 (S.D.N.Y. 1978). In Riggs the court set forth what we believe to be the proper procedure to follow in circumstances similar to those present here:
[W]here a suspect makes a statement which arguably amounts to an assertion of his Miranda rights and the interrogating agent recognizes that the statement is susceptible of that construction, his questioning with regard to the crime he is investigating should immediately cease and he should then inquire of the suspect as to the correct interpretation of the statement. Only if the suspect makes clear that he is not invoking his Miranda rights should substantive questioning be resumed. [at 1222]
It is only then that defendant's waiver of his right to counsel can meet the standard of "an intentional relinquishment or abandonment of a known right or privilege," Brewer v. Williams, supra, 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 439, particularly since "courts must presume that a defendant did not waive his rights ..." North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292 (1979). Detective Clark's question, "Don't you want to give us this statement," was not sufficient to meet this burden and did not satisfy the rigid requirements for waiver set forth in Miranda. It did not clarify defendant's desire to waive his right to be represented by counsel. On the contrary, it merely was directed to defendant's desire to make a statement. Cf. State v. Graham, 59 N.J. 366, 373-375 (1971). Here, unlike State v. McKnight, 52 N.J. 35, 44 (1968), defendant's request for counsel was not respected, and his interrogation continued in the face of that request.
*22 We recognize that if a suspect is indecisive in his request for counsel, there may be some question as to whether he did or did not waive counsel. In such circumstances, the decision as to whether the suspect waived counsel must necessarily be left to the judgment of the interrogating officer. Miranda, supra, 384 U.S. at 485, 86 S.Ct. at 1633, 16 L.Ed.2d at 730. Here, however, the proofs do not reveal how Detective Clark interpreted defendant's request. When defendant reaffirmed his desire to give a statement after requesting counsel, Detective Clark simply "plugged the tape in and started taking a statement from him." This clearly did not satisfy the State's burden of establishing a waiver. In any event, the transcribed statement negates any question as to whether defendant waived counsel. Since "the ultimate responsibility for resolving this constitutional question lies with the courts," Miranda, supra, 384 U.S. at 485, 86 S.Ct. at 1634, 10 L.Ed.2d at 730, we must conclude that he did not.
We do not find any merit in the State's argument that even if we assume that defendant's statement constituted a request for an attorney, the police were not required to stop the interrogation in light of the Supreme Court's opinion in Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). There the Supreme Court held that the invocation of a suspect's right to remain silent does not in itself preclude a resumption of questioning by the police. However, Mosley is readily distinguishable. First, there was a significant time lapse between Mosley's invocation of his right to remain silent and the resumption of questioning by the police, which enabled Mosely to consider and decide whether to give a statement. In fact, the Supreme Court in Mosley specifically noted that the police immediately ceased interrogation and "resumed questioning only after the passage of a significant period of time." 423 U.S. at 106, 96 S.Ct. at 327, 46 L.Ed.2d at 322. Here Detective Clark continued interrogating defendant without any pause whatsoever *23 after defendant had made what must be interpreted, at the very least, as an ambiguous request for an attorney. To allow questioning in these circumstances would undercut the safeguards established by Miranda. See Commonwealth v. Taylor, 374 N.E.2d 81, 85-86 (Mass.Sup.Jud.Ct. 1978); United States v. Jakakas, 423 F. Supp. 564, 569 (E.D.N.Y. 1976). Secondly, the Supreme Court, in Mosley, specifically pointed out that the decision was concerned only with a situation where a suspect in custody indicates that he wishes to remain silent, as contrasted with the situation where, as here, the suspect requests an attorney, 423 U.S. at 101, n. 7, 96 S.Ct. at 325, 46 L.Ed.2d at 320, and reaffirmed that the proper procedure to be followed where there has been a request for an attorney is as expressed in Miranda:
If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. [423 U.S. at 101, 96 S.Ct. at 325, 46 L.Ed.2d at 320]
See also Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), where the Supreme Court emphasized that
The per se aspect of Miranda was thus based on the unique role the lawyer plays in the adversarial system of criminal justice in this country. Whether it is a minor or an adult who stands accused, the lawyer is the one person to whom society as a whole looks as the protector of the legal rights of that person in his dealings with the police and the courts. For this reason the court fashioned in Miranda the rigid rule that an accused's request for an attorney is per se an invocation of his Fifth Amendment rights, requiring that all interrogation cease. [442 U.S. at 719, 99 S.Ct. at 2569, 61 L.Ed.2d at 209; emphasis supplied]
Consequently, we are of the view that the trial judge erred in admitting in evidence defendant's taped confession. Since we cannot find from our study of this record that its admission was harmless beyond a reasonable doubt, see State v. Slobodian, 57 N.J. 18, 23 (1970), we are constrained to reverse the convictions.
*24 Accordingly, the judgment of convictions is reversed and the matter remanded for a new trial.