Reversed and remanded for the entry of a judgment reinstating the site plan approval.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. FRED LARRY, JR., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 27, 1986—Decided June 18, 1986.

Before Judges J.H. COLEMAN and HAVEY.

*Thomas S. Smith, Jr.,* Acting Public Defender, attorney for appellant (*Raymond J. Burke,* Designated Counsel, of counsel and on the letter brief).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for respondent (*Gilbert G. Miller,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

COLEMAN, J.H., J.A.D.

The novel issue raised by this appeal is whether executing an application for a public defender at a county jail at the request of a jail guard is a request for counsel within contemplation of *Edwards v. Arizona,* 451 *U.S.* 477, 101 *S.Ct.* 1880, 68 *L.Ed.*2d 378 (1981). The trial judge held that it did not. For the reasons which follow, we affirm.

A Warren County grand jury returned a two count indictment against defendant and codefendant Gilbert Peterson. The first count charged Larry and Peterson with robbery which occurred on August 13, 1983 when in the course of committing a theft, they "did threaten immediate bodily injury to Thomas D. Marzano and/or did purposely put Thomas D. Marzano in fear of immediate bodily injury," contrary to *N.J.S.A.* 2C:15-1 a(2). Defendant was also charged under the second count of

the indictment with theft, contrary to *N.J.S.A.* 2C:20–3 a. In a jury trial, defendant was found guilty of first degree robbery [1] and theft. At the time of sentencing, the theft was merged with the robbery and defendant was sentenced to a custodial term of 18 years with seven years of parole ineligibility.

Defendant has appealed, contending:

1. THE ADMISSION OF BOTH THE OUT-OF-COURT IDENTIFICATION OF DEFENDANT BASED ON IMPERMISSIVELY SUGGESTIVE PHOTOGRAPHIC LINEUPS AND THE RESULTANT IN–COURT IDENTIFICATION DENIED DEFENDANT DUE PROCESS AT LAW.

2. ADMISSION OF DEFENDANT'S STATEMENT CONFESSION DENIED THE DEFENDANT HIS RIGHTS GUARANTEED BY THE STATE AND FEDERAL CONSTITUTIONS.

3. SERIES OF IMPROPER COMMENTS MADE BY THE PROSECUTOR IN HIS SUMMATION TO THE JURY COMBINED TO DEPRIVE DEFENDANT OF A FAIR TRIAL AND IT WAS ERROR FOR THE TRIAL JUDGE TO DENY DEFENDANT'S RESULTANT MOTION FOR MISTRIAL.

4. THE TOTAL SENTENCE OF 18 YEARS IMPOSED UPON DEFENDANT WAS MANIFESTLY EXCESSIVE AND AN ABUSE OF DISCRETION.

On August 13, 1983 Thomas Marzano, an employee of the Hudson Street Market in Phillipsburg, was robbed of money and food items at gun point. Defendant and Peterson were identified as the robbers by three teenagers, William Hornbaker, age 17, Melisa Lynn, age 14, and Stephanie Nixon, age 14, who observed defendant and Peterson in the store from a distance of three to four feet. Prior to entering the store, Hornbaker observed a black car parked across the street, with its door open and motor running. Lynn memorized the license plate number on the car. After the robbery, defendant and Peterson drove away in the black car. The license plate number was given to the police. The police determined that the getaway vehicle was registered to Peterson.

---

[1] On this appeal defendant has not argued that the language of the indictment charged second degree robbery and that his first degree conviction should therefore be reduced to a second degree conviction. *See State v. Catlow,* 206 *N.J.Super.* 186, 194–195 (App.Div.1985). We decline to raise the issue *sua sponte.*

At a hearing conducted pursuant to *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966), the following facts were developed. On November 29, 1983, Investigator Anthony Bucarey of the Warren County Prosecutor's Office obtained custody of defendant in Virginia where he was incarcerated along with codefendant Peterson. Bucarey transported defendant and codefendant from Virginia to the Phillipsburg police station for processing. After the processing was completed, defendant was transported to the Warren County Jail on the same day. Defendant testified that shortly after his arrival at the Warren County Jail, a jail guard asked him if he was represented by an attorney. When defendant gave a negative response, the guard told defendant that he could fill out a form requesting a public defender. Defendant told the guard that he "might want to fill it out...." Defendant testified that he filled out the form on the night of November 29, 1983 and left it with a guard. He did not see or consult with an attorney until his arraignment the next day at about 3:00 p.m.

On November 30, 1983, Bucarey telephoned the Warren County Sheriff's Department at about 9:51 a.m. and requested that defendant be brought to his office which was located in the offices of the Warren County Prosecutor. Due to some apparent misunderstanding, the Sheriff's Department informed defendant he was going to the Superior Court which was located across the corridor. Defendant arrived at Bucarey's office shortly before 10:15 a.m. Bucarey advised defendant that he wanted to speak with him about an armed robbery in which he was involved. Bucarey then gave defendant the *Miranda* warnings for the first time. Defendant said he understood each warning and he signed a statement in which he acknowledged that he understood the warnings.

Defendant agreed to give a written statement. At 10:35 a.m. Bucarey proceeded to ask defendant a series of questions concerning the robbery. Defendant admitted his involvement in the August 13, 1983 armed robbery of the Hudson Street Market. All of defendant's responses were typed on a state-

ment form at the time they were made. Defendant read the statement after it was typed and corrected a portion of it by crossing out a sentence and adding to the statement in his own handwriting. He initialed the correction as well as the bottom of each page of the statement. Defendant then signed the statement at 11:50 a.m.

Defendant, who was 18 years old at the time of trial, testified that when Bucarey asked him if he wanted to give a statement, he said, "I don't know man...." He said Bucarey gave him his *Miranda* warnings 30 minutes after arrival and told him that he was facing serious charges that carried a prison sentence of 20 years, that seven witnesses had identified him and that the judge would favorably consider the fact that defendant had given a statement in sentencing him. He said he was given some cigarettes.

The trial judge rejected defendant's argument that the statement should not be admitted into evidence because it was the product of psychological coercion and was therefore not voluntary. In support of this argument, defense counsel relied on defendant's testimony regarding promises and threats which Bucarey had allegedly made in order to induce defendant to give a statement. The trial judge found that defendant's testimony was a "complete fabrication." The judge based this finding on his observations of defendant's demeanor on the witness stand and the fact that defendant had signed a certification on the statement form indicating that he was freely and voluntarily providing the statement, without force and fear, promise or threat. In contrast, the trial judge found Bucarey's testimony to be believable.

On this appeal, defendant contends that the statement was the product of mental coercion "based upon a combination of threats and inducements." We find this contention to be unpersuasive. We are completely satisfied that there is substantial credible evidence in the record to support the trial judge's determination that the factual underpinning for the argument

advanced is nonexistent because defendant's testimony was a "complete fabrication,... tailored to fit this immediate hearing ... to get his statement suppressed." *See State v. Miller,* 76 *N.J.* 392 (1978); *State v. Pierce,* 4 *N.J.* 252, 258 (1950); *State v. Godfrey,* 131 *N.J.Super.* 168, 174 (App.Div.1974), aff'd o.b. 67 *N.J.* 267 (1975).

Defendant further contends that the trial judge erred in admitting his written statement into evidence at trial because he had invoked his right to counsel on the evening prior to giving his statement by executing an application form for a public defender. Defendant relies on *Edwards v. Arizona, supra,* in support of his argument that when he executed the form asking for a public defender, he invoked his right to counsel and that a valid waiver of that right could not be established merely by showing that he responded to Bucarey's custodial interrogation after being advised of his *Miranda* rights. Rather, he argues that he was not subject to interrogation by Bucarey until counsel had been made available, unless defendant initiated the conversation. The trial judge rejected this argument and found that *Edwards* was distinguishable since the defendant in that case had requested counsel during the course of the interrogation.

In *Miranda,* the Supreme Court stated,

If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease ... until an attorney is present. [384 *U.S.* at 473–474, 86 *S.Ct.* at 1627, 16 *L.Ed.*2d at 723].

Thus it is well established that a suspect has a Fifth Amendment right to have counsel present during custodial interrogation. Fifteen years after *Miranda* was decided, the Court in *Edwards, supra,* 451 *U.S.* at 484, 101 *S.Ct.* at 1884, held that once a suspect invokes the right to counsel, he may not be questioned further until counsel is provided, unless the suspect initiates a dialogue with law enforcement officials. The Court in *Edwards* stated:

> ... [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.
>
> ... [I]t is consistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel. [*Id.* at 484–485, 101 S.Ct. at 1884–1885; footnotes omitted].

The "bright-line rule" of *Edwards* established that all questioning must cease after an accused requests counsel. *Smith v. Illinois,* 469 *U.S.* 91, ——, 105 *S.Ct.* 490, 496, 83 *L.Ed.*2d 488, 495 (1984); *Solem v. Stumes,* 465 *U.S.* 638, 646, 104 *S.Ct.* 1338, 1343, 79 *L.Ed.*2d 579, 589 (1984). The New Jersey Supreme Court has interpreted *Edwards* as having established a "per se" rule that bars the reinterrogation of all criminal suspects who have invoked the right to counsel unless they initiate further conversation with the authorities. *State v. Kennedy,* 97 *N.J.* 278, 285 (1984); *State v. Wright,* 97 *N.J.* 113, 122 (1984); *State v. McCloskey,* 90 *N.J.* 18, 25 (1982).

The "prophylactic rule," of *Edwards, see Solem v. Stumes, supra,* 465 *U.S.* at 645, 104 *S.Ct.* at 1343, was necessary to prevent law enforcement officials from effectively overriding a suspect's assertion of his *Miranda* rights by badgering him into waiving those rights. *See Oregon v. Bradshaw,* 462 *U.S.* 1039, 1044, 103 *S.Ct.* 2830, 2834, 77 *L.Ed.*2d 405, 411 (1983). The protective umbrella of *Edwards* is not applicable unless and until a suspect asserts during custodial interrogation the right to have counsel present. This is so because "[t]he Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation." *Edwards v. Arizona, supra,* 451 *U.S.* at 485–486, 101 *S.Ct.* at 1885. *See also Rhode Island v. Innis,* 446 *U.S.* 291, 298, n. 2, 100 *S.Ct.* 1682, 1688, n. 2, 64 *L.Ed.*2d 297, 306 (1980). Under the *Edwards* Fifth Amendment analysis, a protective umbrella

was created to enhance the constitutional prohibition against compelled self-incrimination.

Within a Fifth Amendment analysis, we are completely satisfied from the evidence that defendant did not assert the right to counsel during a custodial interrogation. He filled out the form for a public defender at the request of a jail guard while no one was interrogating him. When defendant was interrogated by Bucarey on November 30, 1983, defendant did not assert the right to have counsel present before giving a statement. Under these circumstances the alleged assertion of the right to counsel did not occur during any custodial interrogation.

Defendant argues that filling out the form for a public defender constitutes a request for counsel within the contemplation of *Edwards*. We recognize that a suspect's request for counsel must be given a broad, rather than a narrow, interpretation and that an equivocal assertion of the right to counsel must be interpreted in the light most favorable to a defendant. *State v. Wright, supra,* 97 *N.J.* at 119; *State v. McCloskey, supra,* 90 *N.J.* at 26, n. 1. The standard to be followed when an ambiguous request for counsel has been made was outlined in *State v. Fussell,* 174 *N.J.Super.* 14, 21 (App.Div.1980). There, we observed:

> While defendant's request for counsel may have been somewhat ambiguous, nevertheless we deem it to have been a sufficient assertion of his right to counsel to have required Detective Clark to stop any further substantive interrogation until it was clearly determined that defendant desired to proceed without counsel. *See United States v. Riggs,* 537 *F.*2d 1219, 1222 (4 Cir.1976); *United States v. Chansriharaj,* 446 *F.Supp.* 107, 108 (S.D.N.Y.1978). In *Riggs* the court set forth what we believe to be the proper procedure to follow in circumstances similar to those present here:
>
>> [W]here a suspect makes a statement which arguably amounts to an assertion of his *Miranda* rights and the interrogating agent recognizes that the statement is susceptible of that construction, his questioning with regard to the crime he is investigating should immediately cease and he should then inquire of the suspect as to the correct interpretation of the statement. Only if the suspect makes clear that he is not invoking his *Miranda* rights should substantive questioning be resumed. [at 1222] [*State v. Fussell,* 174 *N.J.Super.* at 21]

██ We are entirely satisfied that filling out the form requesting a public defender in this case was neither an explicit nor an implicit request for the presence of an attorney within the meaning of *Miranda* and *Edwards.* The form was given to defendant by a jail guard at the jail upon the guard's initiative rather than at the request of defendant. When defendant was given the form he said he might want to fill it out. When defendant was interrogated the next day, he did not request an attorney and he did not advise Bucarey that he had filled out the form for a public defender. Under these circumstances, we view the filling out of the form for a public defender at the jail as nothing more than a good case management technique to expedite the paper work associated with the impending arraignment. Here, the form was filled out in contemplation of satisfying defendant's Sixth Amendment right to counsel. Defendant gave no indication that he did not wish to deal with the police prior to his arraignment except through counsel. *State v. McCloskey, supra,* 90 *N.J.* at 26, n. 1.

After the briefs were filed, *Michigan v. Jackson,* 475 *U.S.* ——, 106 *S.Ct.* 1404, 89 *L.Ed.*2d 631, was decided on April 1, 1986. *Jackson* made the *Edwards* "bright-line rule" applicable to both Fifth and Sixth Amendment right to the presence of counsel. *Michigan v. Jackson, supra,* —— *U.S.* ——, ——, 106 *S.Ct.* 1408, 1411, 89 *L.Ed.*2d at 639, 642. *Jackson* made the "bright-line rule" of *Edwards* applicable to the Sixth Amendment right to counsel when the accused asserts the right to counsel, "at an arraignment or similar proceeding." *Id.* —— *U.S.* at ——, 106 *S.Ct* at 1411, 89 *L.Ed.*2d at 642. *See also Edwards v. Arizona, supra,* 451 *U.S.* at 485, 101 *S.Ct.* 1885. Only then are additional safeguards necessary. *Id.* at 484, 101 *S.Ct.* at 1884.

██ Based upon our previous analysis, we hold that defendant's Sixth Amendment rights were not violated. Filling out the form for a public defender was not an assertion of defendant's Sixth Amendment rights. Additionally, the alleged asser-

tion of the right to counsel's presence was not made "at an arraignment or similar proceeding." Unlike the facts in *Jackson*, here the form was not filled out during any judicial proceeding. Rather, it was filled out at the jail at the request of a guard, and the statement was given before the arraignment. We do not read *Jackson* to extend the "bright-line rule" of *Edwards* to every case in which the Sixth Amendment right to counsel has attached. *See Michigan v. Jackson, supra,* 475 *U.S.* at ——, 106 *S.Ct.* at 1411, 89 *L.Ed.*2d at 642.

To summarize, we hold that under a Fifth Amendment analysis *Edwards* requires assertion, during a custodial interrogation, of the right to the presence of counsel. Under a Sixth Amendment analysis, *Jackson* requires assertion during an arraignment or similar proceeding of the right to the presence of counsel before the "bright-line rule" of *Edwards* is applicable. Under the facts of the present case, *Edwards* was not violated.

We have considered the remaining contentions raised and the arguments advanced in support of them and find they are clearly without merit. *R.* 2:11–3(e)(2). The judgment of conviction is therefore affirmed.

Affirmed.