759 A.2d 355

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. RAMON PEREZ, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 24, 2000—Decided October 5, 2000.

Before Judges HAVEY, KEEFE and COLLESTER.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Christine M. Guerci*, Designated Counsel, on the brief).

*John J. Farmer, Jr.*, Attorney General, attorney for respondent (*Wendy Alice Way*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

COLLESTER, J.A.D.

Tried to a jury, defendant was convicted of twenty-eight counts of third degree burglary, contrary to the provisions of *N.J.S.A.* 2C:18–2; twenty counts of third degree theft, contrary to the provisions of *N.J.S.A.* 2C:20–3; one count of fourth degree theft, contrary to the provisions of *N.J.S.A.* 2C:20–3; one count of third degree theft by receiving a stolen motor vehicle, contrary to the provisions of *N.J.S.A.* 2C:20–7; one count of third degree conspiracy, contrary to the provisions of *N.J.S.A.* 2C:5–2 and *N.J.S.A.* 2C:20–3; and three counts of disorderly persons theft, contrary to the provisions of *N.J.S.A.* 2C:20–3. After granting the prosecutor's motion for an extended term, the sentencing judge imposed an aggregate term of imprisonment of twenty-five years with a twelve and one-half year period of parole disqualification plus $23,368.59 payable as restitution, a VCCB penalty of $2,650 and a $3,975 SNSF penalty. Defendant appeals his convictions and sentence.

The State's proofs at trial were as follows. A joint task force was formed of federal and state law enforcement personnel to investigate a series of burglaries having a similar *modus operandi*. The burglaries focused on residences in apartment or condominium complexes rather than single family homes. There was no evidence of forced entry, but broken toothpicks were left in the lock cylinders of the doors to the residences. The burglaries occurred on weekdays and during daylight hours when residents were at work. The premises were ransacked, and items of

jewelry, clothing, small electronic equipment and cash were taken along with pieces of luggage used to carry the items away. A rear sliding door or rear window was generally left open. Initial investigation pointed to suspects described as Hispanic males dressed in business suits.

As a result of information obtained from a confidential informant, the joint task force identified defendant Ramon Perez as a suspect. Surveillance of Perez began on February 5, 1996, at his residence in Brooklyn, New York. On the morning of February 9, 1996, Perez was observed driving his grey Pontiac automobile accompanied by another Hispanic male. Both were dressed in business suits with dress shirts and ties. Perez and his passenger, later identified as Roberto Navedo, drove into New Jersey, proceeded south on the New Jersey Turnpike to Exit 11 and pulled into a parking space at the commuter lot of the Garden State Arts Center. Navedo got out of the Pontiac and entered a blue car. He pulled out of the parking lot in the blue car and was followed by defendant in the grey Pontiac. Both cars drove to Perth Amboy where defendant left the Pontiac in front of a liquor store and joined Navedo in the blue car. The two men then proceeded north on Route 440 to northbound Route 287. They were followed into Pennsylvania where the surveillance team lost sight of them. The team returned to the liquor store where defendant had parked the grey Pontiac and waited for the men to return. Shortly before 5:00 p.m. Perez and Navedo returned in the blue car.

After Perez got out of the car, police officers arrested the two men. The back seat of the car was loaded with bags, luggage and stereo equipment. Further examination revealed that the steering column was broken out. Later it was confirmed that the car had been reported stolen.

As defendant was transported to Perth Amboy police headquarters, he was read his *Miranda* [1] warnings. He responded, "Well,

---

[1] *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

you already got me ... with all the stuff, what more do you want?" A search of defendant's person yielded a cellular phone, a set of lock pick tools and miscellaneous colored toothpicks, some broken. At police headquarters he consented to a search of his grey Pontiac and was present when the search was conducted. Recovered from the automobile were a slap hammer, ice pick, a bent coat hanger commonly used to gain illegal entry into automobiles and various items of personal property later identified as stolen.

On the evening of the arrest defendant was again given his *Miranda* warnings. Again he waived his right to be silent and to consult with an attorney. He gave a formal statement to Investigator Brian Caffrey of the Middlesex County Prosecutor's Office, recounting many burglaries and describing his *modus operandi.* He chose residences by ringing the doorbell to determine that no one was home. He would pick the lock to gain entry and jam toothpicks into the locks to avoid being surprised by a resident returning home unexpectedly. His escape routes were through rear windows or sliding doors.

Defendant was held in the Middlesex County Adult Corrections Center in lieu of bail. On February 13, 1996, an intake person from the Middlesex County Criminal Case Management Office interviewed him and assisted in completion of a case management form which included a questionnaire relating to financial eligibility for a public defender. The intake worker indicated on the form a recommendation for acceptance by the public defender.

On February 15, 1996, Detectives Stephen Wilczynsky and Anthony Carro from the Metuchen Police Department interviewed the defendant after advising him of his *Miranda* warnings. Defendant waived his *Miranda* rights and agreed to speak to the detectives. He admitted to a burglary and theft in Metuchen and recalled that a UPS sticker on the door alerted him that no one was home.

On February 16, 1996, Investigator Caffrey of the Prosecutor's Office took another statement from defendant. Again defendant

was advised and waived his *Miranda* rights. He described his burglary methods beginning with the theft of a car by Navedo and ending with the manner in which he entered the residences and stole the property.

The Middlesex County Public Defender's Office opened a file on defendant on February 21, 1996. An assistant public defender was assigned the case, and she ordered an interview by an investigator. The record does not disclose when any interview took place. On February 27, 1996, a motion for a reduction of bail was filed. No disposition is contained in the record.

Also on February 27, 1996, two detectives of the Edison Police Department went to see the defendant at the Middlesex County Adult Corrections Center and showed him an *ex parte* order signed by a Superior Court judge permitting them to take defendant from the facility so that he could "clear up" some of the unsolved burglaries in which he was a suspect. Defendant again was advised of his *Miranda* warnings and agreed to waive his rights. He drove with the detectives and pointed out scenes of numerous burglaries he committed including a dozen for which he was a suspect and six additional ones.

On March 11, 1996, defendant was interviewed by Plainsboro Detective Christopher Weidman. Again defendant was advised of his rights. Again he did not request counsel, and this time he admitted to burglaries in Plainsboro, providing additional information that he put saliva on peep holes of neighboring apartments to insure he could not be seen breaking into residences.

At trial the State called a series of victims who testified that upon return from work they found their homes had been ransacked and that jewelry, cash and pieces of luggage had been stolen. In each instance broken toothpicks were found in the lock cylinders.

On appeal defendant asserts the following:

POINT I—THE TRIAL COURT'S ADMISSION OF THE INCULPATORY STATEMENTS OF THE DEFENDANT VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHT TO COUNSEL AND TO REMAIN SILENT.

*POINT II*—DEFENDANT'S RIGHT TO A FAIR TRIAL WAS PREJUDICED BY PROSECUTORIAL MISCONDUCT.

*POINT III*—VARIOUS ERRORS IN THE TRIAL BELOW VIOLATED DEFENDANT'S FUNDAMENTAL FAIRNESS RIGHT AND OPERATED TO DEPRIVE DEFENSE OF A FAIR TRIAL.

   A.  The Identification of Defendant's Attorney as The "Public Defender" Was Highly Prejudicial.

   B.  Allowing Sergeant William Paglione to Testify as an Expert Witness Was Unfair and Deprived Defendant of Proper Discovery.

*POINT IV*—DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE.

Defendant argues that the trial court erred in failing to suppress the statements he made to police after the date he completed papers requesting representation by a public defender, claiming that his rights under the Fifth and Sixth Amendments were thereby violated. Judge Mathias Rodriguez found that in each of the post-arrest interrogations the defendant was advised of his *Miranda* warnings. Noting that defendant was no stranger to the criminal justice system, Judge Rodriguez also found that defendant was aware of his constitutional rights and knowingly waived them.

■ Both the Fifth and Sixth Amendments guarantee the right to counsel in pretrial interrogation. The Fifth Amendment protects an accused from self-incrimination during questioning by police, and the Sixth Amendment remedies the unfairness of such questioning when the defendant is unrepresented. *State v. Sanchez*, 129 *N.J.* 261, 264–66, 609 *A.*2d 400 (1992); *see also State v. Tucker*, 265 *N.J.Super.* 296, 318, 626 *A.*2d 1105 (App.Div.1993), *aff'd*, 137 *N.J.* 259, 645 *A.*2d 111 (1994).

■ The Fifth Amendment affords a suspect an absolute right to counsel during custodial interrogation. *Miranda, supra,* 384 *U.S.* at 474, 86 *S.Ct.* at 1627, 16 *L.Ed.*2d at 723. All questioning must cease when a suspect invokes this right. *Edwards v. Arizona,* 451 *U.S.* 477, 484–85, 101 *S.Ct.* 1880, 1884–85, 68 *L.Ed.*2d 378, 384 (1981). However, unless and until a suspect asserts his right to have counsel present following adequate *Miranda* warn-

ings and waiver, the custodial interrogation may continue. *State v. Larry*, 211 *N.J.Super.* 221, 228, 511 *A.2d* 704 (App.Div.1986).

In this instance the defendant made incriminating statements during custodial interrogations after receipt of *Miranda* warnings. At no point did he request counsel or advise the questioners that he had requested counsel even though he was repeatedly advised of his right to counsel prior to questioning. We find no violation of the defendant's Fifth Amendment rights.

We also find that defendant's Sixth Amendment rights were not compromised. In *Michigan v. Jackson*, 475 *U.S.* 625, 635, 106 *S.Ct.* 1404, 1411, 89 *L.Ed.2d* 631, 642 (1986), the United States Supreme Court applied the *Edwards* exclusionary rule to the Sixth Amendment, holding that a defendant who requested counsel post-indictment had a Sixth Amendment right to have counsel at any police interrogation. The Court stated:

> *Edwards* is grounded in the understanding that 'the assertion of the right to counsel [is] a significant event,' and that 'additional safeguards are necessary when the accused asks for counsel.' We conclude that the assertion is no less significant, and the need for additional safeguards no less clear, when the request for counsel is made at an arraignment and when the basis for the claim is the Sixth Amendment. We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.
>
> [*Ibid.*]

In *Larry*, *supra*, 211 *N.J.Super.* at 231, 511 *A.2d* 704, the defendant signed a form requesting a public defender given to him by a jail guard. The following day before his arraignment he was interviewed by a police investigator and gave an incriminating statement. *Ibid.* We held that filling out a form for a public defender was not an explicit or implicit request for counsel so as to trigger the bright-line rule of *Edwards*. *Id.* at 230, 511 *A.2d* 704.

> [W]e view the filling out of the form requesting a public defender at the jail as nothing more than a good case management technique to expedite the paperwork associated with the pending arraignment. Here, the form was filled out in contemplation of satisfying defendant's Sixth Amendment right to counsel. Defen-

dant gave no indication that he did not wish to deal with the police prior to his arraignment except through counsel.

[*Ibid.*]

*See also State v. Reese,* 795 *S.W.*2d 69 (Mo.1990)(police properly interviewed defendant under Sixth Amendment after he had filled out form requesting counsel).

Defendant asserts that *Larry* is factually distinguishable because defendant was approached with the applicable form by an employee of the court system, a criminal case management officer, rather than a jail guard. However, this is a distinction without a difference. As in *Larry,* the completion of the form for appointment of a public defender by a member of the Office of Criminal Management was designed to expedite and not substitute for a judicial proceeding.

■ *Jackson* requires that the defendant assert his Sixth Amendment right during an arraignment or similar proceeding in order for the *Edwards* rule to apply. *Michigan v. Jackson, supra,* 475 *U.S.* at 635, 106 *S.Ct.* at 1411, 89 *L.Ed.*2d at 642. *Sanchez, supra,* 129 *N.J.* at 277, 609 *A.*2d 400, went further in holding that police authorities may not initiate a conversation with an unrepresented defendant after indictment. However, *Tucker, supra,* 137 *N.J.* at 290, 645 *A.*2d 111, declined to extend the reach of *Sanchez* to a point in time earlier than the return of an indictment and held that the defendant's pre-indictment statements following a knowing waiver were not precluded by the Sixth Amendment.

In this case defendant did not request counsel during a formal court proceeding prior to his incriminating statements. Although the briefs and appendix do not include any record of a first appearance hearing, we assume that there was compliance with *R.* 3:4–2(a).

■ The defendant consistently and knowingly waived his right to counsel when given his *Miranda* warnings before each interview with the police. The constitutionally protected right to counsel does not prevent a defendant from voluntarily electing to

speak to police in the absence of an attorney. *Michigan v. Harvey,* 494 *U.S.* 344, 352, 110 *S.Ct.* 1176, 1181, 108 *L.Ed.*2d 293, 301 (1990); *see also Tucker, supra,* 265 *N.J.Super.* at 323, 626 *A.*2d 1105. Therefore, there was no error in admitting defendant's incriminating statements.

After careful review of the record, we have determined that the remaining arguments made by defendant are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(2).

Affirmed.