10 A.3d 880

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DAMU ALSTON, DEFENDANT–APPELLANT.

Argued September 13, 2010—Decided January 20, 2011.

*John J. McMahon,* Chief Trial Attorney, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Debra G. Simms,* Special Deputy Attorney General, Acting Assistant Prosecutor, argued the cause for respondent (*Robert D. Laurino,* Acting Essex County Prosecutor, attorney; *Ms. Simms* and *Hilary L. Brunell,* Executive Assistant Prosecutor, on the letter briefs).

*Daniel I. Bornstein,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Paula T. Dow,* Attorney General, attorney).

Justice HOENS delivered the opinion of the Court.

Defendant Damu Alston was arrested as part of a murder investigation and taken to police headquarters for questioning. He was advised of his rights, which he acknowledged both orally and in writing that he understood, and he then waived all of his rights, again both orally and in writing. Immediately after he signed the waiver, but before he was asked any questions by the police detectives, however, defendant made statements and asked questions that led to a brief discussion with one of the detectives relating to his right to counsel. Following that exchange, he confessed.

The trial court found that defendant's statements were an equivocal assertion of his right to counsel and that the police both had failed to honor that request and had misinformed defendant when responding to his questions. Based on those findings, the court concluded that there was insufficient proof that defendant's waiver of his rights was knowing, intelligent and voluntary, and granted his motion to suppress his confession.

Although the Appellate Division agreed that the statements made by defendant were ambiguous, the appellate panel concluded that the detective's questions in response to defendant's statements were permissible, because they were narrowly tailored and were only designed to clarify whether defendant was asserting his right to counsel. Based upon its review of the stipulated transcript, the Appellate Division further concluded that the verbal exchange between defendant and the detective clarified that defendant had not asserted any of his rights, and the court therefore reversed the suppression order.

This appeal requires this Court to consider whether the statements made by defendant immediately after he signed the waiver of his rights were an ambiguous assertion of his right to counsel and whether the detective's questions in response constituted a permissible clarification. Because we conclude that the officer's questions did not exceed the scope of permissible clarification and because defendant's statements, when clarified, were not an asser-

tion of his right to counsel, we affirm the judgment of the Appellate Division.

## I.

As a result of their investigation into the September 2, 2007 murder of Dana Grimsley, Newark police officers obtained a warrant for defendant's arrest. That warrant was executed in the early morning hours of January 8, 2008, when defendant was arrested at his home. He was transported to the Newark Police Station, arriving around 8:00 a.m., and he was left in an interview room for about two hours while detectives filled out paperwork and prepared to interview him.

The entire interview, which was conducted by Essex County Detective Christopher Smith and Newark Police Department Detective Murad Muhammad, was tape recorded. A transcript of that interview was prepared for use by the parties and the court in connection with defendant's motion to suppress, but the parties later agreed that it was not entirely accurate. A corrected transcript, to which the parties stipulated for purposes of appellate review, reveals that defendant was fully informed of all of his *Miranda*[1] rights, and that he repeatedly responded that he understood each of those rights. A *Miranda* waiver form, reiterating defendant's rights, was then read to him. It included standard language advising him that he could withdraw his waiver and assert any of his rights at any time during the interrogation. Defendant then waived his rights and signed the waiver in the presence of the two detectives.

The transcript of the interview reveals that immediately after acknowledging that he understood and was waiving his rights, the following conversation took place:

Mr. Alston: I feel like I'm signing my life away.

Detective Muhammad: Not signing your life away.

---

[1] *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

Mr. Alston: Should I not have a lawyer in here with me?

Detective Muhammad: You want a lawyer?

Mr. Alston: No, I am asking you guys, man. I don't—I'm just—I see you guys, man.

Detective Muhammad: I can't make you.

Mr. Alston: Sir, if I did want a lawyer in here with me how would I be able to get one in here with me?

Detective Muhammad: That's on—that's on you. If you want a lawyer, then we—stop and you going to get your lawyer. That's why he read that clearly to you and your waiver. If you want to stop at this time then we stop at this time. It's either yes or no, Damu.

Mr. Alston: I'm already waist-deep, why?

Detective Muhammad: Huh?

Mr. Alston: I'm already waist-deep, about to drown, why?

Detective Muhammad: You've got to answer yes or no.

Mr. Alston: I already did.

Detective Muhammad: Do you want a lawyer? No—that's what you're saying?

Mr. Alston: When I go to court, I guess.

Detective Smith: Do—do you want to continue answering questions—answering our questions?

Mr. Alston: Sure. Why not?

Defendant then confessed that he shot the victim to "get away from him and get him off me." The entire interview, including the recitation of rights, the above-quoted discussion, and defendant's confession, took twenty-four minutes and forty-one seconds.

After he was indicted for first-degree murder, *N.J.S.A.* 2C:11–3a(1)(2), second-degree possession of weapons for an unlawful purpose, *N.J.S.A.* 2C:39–4a, and third-degree unlawful possession of weapons, *N.J.S.A.* 2C:39–5b, defendant moved to suppress his confession. The motion court focused its analysis on defendant's question, "if I did want a lawyer in here with me how would I be able to get one in here with me?" and the detective's response, "that's on you." Finding that defendant's question was an equivocal assertion of his right to counsel, the motion court concluded that the detective's response might have been misunderstood to mean that it was defendant's obligation to secure counsel on his own. The court further reasoned that, under the circumstances, the detective was required to clarify what he meant or to reiterate

that defendant had the right to have an attorney appointed if he could not afford one. Finding that the detective's responses to defendant amounted to inconsistent and inaccurate information about his rights, the court concluded that it could not find that defendant had knowingly waived his right to counsel and granted his motion to suppress.

The Appellate Division granted the State's application for leave to appeal, and reversed the motion court's suppression order. In an unpublished opinion, the appellate panel acknowledged that when a defendant makes an unambiguous request for counsel, the police are obligated to honor it scrupulously. However, the panel also recognized that if the words used by a suspect are ambiguous, the police may ask questions to clarify whether or not the suspect is indeed asserting one of his or her rights. Applying those principles to the statements and responses in the exchange between defendant and the detective, the panel concluded that defendant's statements were ambiguous, and that the detective narrowly tailored his responses in an effort to elicit whether defendant wanted the interview to cease or continue. The Appellate Division concluded that defendant's responses constituted a waiver of his rights, and reversed the order suppressing his confession.

We granted defendant's motion for leave to appeal the judgment of the Appellate Division order, 201 *N.J.* 151, 988 *A.*2d 1175 (2010), and we thereafter granted leave to the Attorney General to participate in the appeal as an amicus curiae.

## II.

We begin with a recitation of the well-settled principles of law that govern this appeal. The United States Supreme Court set forth the framework for our analysis in *Miranda*, establishing the now-familiar warnings designed to safeguard the Fifth Amendment's guarantee of the privilege against self-incrimination. *See Miranda, supra,* 384 *U.S.* at 444, 468–72, 86 *S.Ct.* at 1612, 1624–26, 16 *L.Ed.*2d at 706–07, 720–22. As the Court made clear, if the

accused "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Id.* at 444–45, 86 *S.Ct.* at 1612, 16 *L.Ed.*2d at 707. The Court subsequently refined this aspect of its analysis, holding that once a request for counsel has been made, an interrogation may not continue until either counsel is made available or the suspect initiates further communication sufficient to waive the right to counsel. *See Edwards v. Arizona,* 451 *U.S.* 477, 484–85, 101 *S.Ct.* 1880, 1884–85, 68 *L.Ed.*2d 378, 386 (1981).

The United States Supreme Court has drawn a strict line to identify what will qualify as a request for counsel. The Court initially recognized that courts had used three different methods to analyze ambiguous requests for counsel, but declined to endorse any of them explicitly. *See Smith v. Illinois,* 469 *U.S.* 91, 95–96 & n. 3, 105 *S.Ct.* 490, 493 & n. 3, 83 *L.Ed.*2d 488, 494 & n. 3 (1984). In 1994, however, the Court made its choice, adopting the "threshold standard of clarity" approach, pursuant to which the Fifth Amendment only requires police to stop questioning if the suspect makes a request for counsel that is unambiguous or unequivocal. *See Davis v. United States,* 512 *U.S.* 452, 459–62, 114 *S.Ct.* 2350, 2355–57, 129 *L.Ed.*2d 362, 371–73 (1994). Using that approach, if a suspect makes a statement that is ambiguous, or that merely "might" be an invocation of the right to counsel, the Court permits officers to continue their questioning. *Id.* at 459, 114 *S.Ct.* at 2355, 129 *L.Ed.*2d at 371.

The Court intentionally adopted an objective test, which it derived from balancing the concerns of law enforcement against the need to protect suspects from police coercion. Because the Court reasoned that effective law enforcement would be hampered if officers were required to make judgment calls about whether a suspect was requesting counsel, it concluded that a clear line of demarcation was the preferable approach. *Id.* at 461, 114 *S.Ct.* at 2356, 129 *L.Ed.*2d at 373. As a result, the Court held that an officer is only required to stop the interrogation if a suspect "articulate[s] his desire to have counsel present sufficiently clearly

that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459, 114 *S.Ct.* at 2355, 129 *L.Ed.*2d at 371. Applying that rule in *Davis*, the Court determined that defendant's statement "[m]aybe I should talk to a lawyer," did not rise to the level of clarity requiring the police to cease their interrogation. *Id.* at 462, 114 *S.Ct.* at 2357, 129 *L.Ed.*2d at 373.

Although the Court explicitly adopted a clear rule, its opinion continued with the observation that

> when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney. Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel. But we decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.
>
> [*Id.* at 461–62, 114 *S.Ct.* at 2356, 129 *L.Ed.*2d at 373.]

By the time the United States Supreme Court announced its bright line test in *Davis*, this Court had already taken a different approach. Indeed, a decade earlier, this Court had observed that "because the right to counsel is fundamental, courts interpret equivocal requests for counsel in the light most favorable to the defendant." *State v. McCloskey*, 90 *N.J.* 18, 26 n. 1, 446 *A.*2d 1201 (1982) (citations omitted). We subsequently relied on that observation to conclude that a defendant's statement that he would not "sign any more deeds [or waivers] without a lawyer present," although equivocal, nonetheless constituted a request for counsel. *State v. Wright*, 97 *N.J.* 113, 119–20, 477 *A.*2d 1265 (1984).

Following the announcement by the United States Supreme Court of its more restrictive approach in *Davis*, this Court did not alter its course, but continued to employ the standard identified in *McCloskey* and *Wright*. That is, this Court set the threshold at whether a suspect's statement "arguably" amounted to an assertion of *Miranda* rights, and held that in those circumstances, the officer must clarify with the suspect in order to correctly interpret

the statement. The line of cases reaching that result began with the Court's consideration of the corollary right to remain silent, in factual circumstances in which the defendant told officers that he wanted "to lie down and 'think about what happened.'" *State v. Bey II,* 112 *N.J.* 123, 135, 548 *A.*2d 887 (1988). In considering whether those words were an invocation by defendant of his right to remain silent, this Court cautioned that "[a]ny words or conduct that reasonably appear to be inconsistent with defendant's willingness to discuss his case with the police are tantamount to an invocation of the privilege against self-incrimination." *Id.* at 136, 548 *A.*2d 887. Recognizing, however, that not every ambiguous statement constitutes the assertion of a right that would terminate questioning, the Court concluded that the request to "think about what happened" was merely that, an expression of the suspect's interest in having time to think. *Id.* at 138, 548 *A.*2d 887. Concluding that the words were neither an invocation of the right to remain silent nor a request to consult with a lawyer, the Court ruled that officers were not obligated to stop questioning him. *Id.* at 136, 138, 548 *A.*2d 887.

This Court thereafter explained the general rule to be that "a suspect need not be articulate, clear, or explicit in requesting counsel; any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel." *State v. Reed,* 133 *N.J.* 237, 253, 627 *A.*2d 630 (1993) (citations omitted). Because in *Reed* we analyzed the effect of the failure of the police to advise defendant that his family had retained an attorney who was available to consult with him, we did not need to address further the propriety of police responses to ambiguous assertions of constitutional rights.

We did offer additional guidance about ambiguous invocations of the right to counsel when we held that a suspect, who asked his mother to call his lawyer as police were taking him from his home, had made an equivocal request for counsel. *State v. Chew,* 150 *N.J.* 30, 63, 695 *A.*2d 1301 (1997). In that context, we declined to follow the lead of the United States Supreme Court in *Davis,* and

we held that even though the suspect had directed his request about counsel to his mother, because he did so in the presence of the police officers, it was sufficient to require the police to clarify whether he intended to invoke his right to counsel before questioning him. *Ibid.*

When a suspect's words are ambiguous, this Court has permitted police to follow up by asking questions that are designed to clarify the meaning of those words. *See Wright, supra,* 97 *N.J.* at 120 & n. 4, 477 *A.*2d 1265 (citing *United States v. Riggs,* 537 *F.*2d 1219 (4th Cir.1976)). In authorizing clarifications, this Court relied on reasoning that the Appellate Division had previously found persuasive. *See ibid.* (citing *State v. Fussell,* 174 *N.J.Super.* 14, 21, 415 *A.*2d 351 (App.Div.1980)). The panel in *Fussell* had concluded that the approach taken by the United States Court of Appeals for the Fourth Circuit, which permitted officers faced with ambiguous assertions of rights to pose limited questions for the purpose of clarifying the suspect's meaning and intention, was the constitutionally proper procedure. *Fussell, supra,* 174 *N.J.Super.* at 21, 415 *A.*2d 351 (quoting *Riggs, supra,* 537 *F.*2d at 1222). In reaching that conclusion, the appellate panel explained that, when faced with an ambiguous assertion of a right, it is only through evaluation of clarifying follow-up inquiries and the responses to those inquiries that a court can ensure that a waiver of defendant's right was given intentionally and voluntarily. *Ibid.*

In permitting questions that are meant to clarify whether a *Miranda* right has been invoked, this Court has reasoned that "questioning [of that type] is not considered 'interrogation' under *Miranda,* because it is not intended to 'elicit an incriminating response from the suspect.'" *State v. Johnson,* 120 *N.J.* 263, 283, 576 *A.*2d 834 (1990) (citations omitted). The scope of that permission, however, is limited because we have allowed only "clarification, not questions that 'operate to delay, confuse, or burden the suspect in his assertion of his rights.'" *Ibid.* (quoting *Christopher v. Florida,* 824 *F.*2d 836, 842 (11th Cir.1987)). Drawing on reasoning adopted by the Eleventh Circuit, this Court concluded

that a suspect's statement "I can't talk about it" was ambiguous and held that it was impermissible for the officers to continue to question the suspect without clarifying what he meant. *Id.* at 284, 576 *A.*2d 834.

Many of the fact patterns that the Appellate Division has considered have turned on whether the suspect's words amounted to an assertion of the right to counsel at all. For example, the Appellate Division has concluded that a suspect's remark to her mother during a telephone call in the officer's presence that she was not allowed to have a lawyer was indeed an assertion of the right to counsel that should have been honored. *State v. Elmore,* 205 *N.J.Super.* 373, 380, 500 *A.*2d 1089 (App.Div.1985). Similarly, the court has held that a suspect who agreed to cooperate but who also said "[w]e have to put in the record that this statement had to stand the approval of the attorney before we can submit it as evidence," intended to assert his right to counsel, which should have been honored. *State v. Dickens,* 192 *N.J.Super.* 290, 297–98, 469 *A.*2d 965 (App.Div.1983), *certif. denied,* 97 *N.J.* 697, 483 *A.*2d 207 (1984). By contrast, the Appellate Division has concluded that a suspect who, when asked if he wished to call his lawyer, responded by saying "[n]o, for what? . . . . No, with what money, I have no money, he wants . . ." did not assert his right to counsel. *State v. Cardona,* 268 *N.J.Super.* 38, 43, 45–46, 632 *A.*2d 845 (App.Div.1993), *certif. denied,* 135 *N.J.* 300, 639 *A.*2d 300 (1994).

 As these decisions illustrate, if the words amount to even an ambiguous request for counsel, the questioning must cease, although clarification is permitted; if the statements are so ambiguous that they cannot be understood to be the assertion of a right, clarification is not only permitted but needed.

In a recent decision, the Appellate Division considered a fact pattern in which the suspect did not make an ambiguous statement but instead asked the officer "[d]o you think I need a lawyer?" *State v. Messino,* 378 *N.J.Super.* 559, 573, 876 *A.*2d 818 (App.Div.), *certif. denied,* 185 *N.J.* 297, 884 *A.*2d 1266 (2005). The officer replied by explaining that it was his responsibility to tell

the suspect that he had a right to a lawyer but "that was his call." *Ibid.* Having determined that the suspect had been properly informed of his rights and that the inquiry was not a request for counsel, but instead was a request for the officer's opinion about the exercise of a known right, the Appellate Division rejected defendant's argument that his confession should have been suppressed. *Id.* at 578, 876 *A.*2d 818. The Appellate panel in *Messino* supported its conclusion by referring to statements that two federal courts had found to be requests for counsel. *Ibid.; see Maglio v. Jago,* 580 *F.*2d 202, 203 (6th Cir.1978) (holding that statement "Maybe I should have an attorney" was assertion of right to counsel); *United States v. Clark,* 499 *F.*2d 802, 805 (4th Cir.1974) (holding that statement "I had better talk to a lawyer" was a request for counsel). By comparison, the panel concluded that the suspect's statement in *Messino* was more in the nature of a request for advice than an ambiguous assertion of the right to counsel and therefore did not require the questioning to end. *Messino, supra,* 378 *N.J.Super.* at 578, 876 *A.*2d 818.

### III.

The essence of defendant's argument before this Court is that the words he spoke during his verbal exchange with the detective amounted to an equivocal request for counsel and that the police were required to scrupulously honor that request by ending their interview. He therefore asserts that no clarifying questions were needed and that the detective failed to honor the right he asserted by proceeding. Alternatively, he argues that even if clarifying questions were appropriate, the detective's response to his inquiry was misleading, effectively nullifying any waiver.

Our analysis of the words that defendant chose [2] does not lead us to the conclusion he urges this Court to reach. The initial

---

[2] We note that the parties stipulated to the transcript that was used for purposes of the appeal, and the relevant portions of which we have quoted. In

statement that he made, "should I not have a lawyer?" was, in actuality, not an assertion of a right, ambiguous or otherwise. Rather, it was a question, posed to the investigating officer, that amounted to defendant's request for advice about what the detective thought that defendant should do. The response of the officer, which was entirely appropriate under the circumstances, was a simple request for clarification, in which he asked "[do y]ou want a lawyer?"

If there were any doubt about the fact that defendant was seeking advice, his next words were clear, because in answer to the question about whether he actually wanted a lawyer, he said "No, I am asking you guys, man." Nothing in that response amounted to even an ambiguous request for counsel; rather, it was an emphatic "no" followed by a continued effort to secure advice and guidance from the police about what they thought defendant's best course of action was at the time. Likewise, the next response of the officer, "I can't make you," was not an inaccurate statement, but instead was the officer's obvious attempt to avoid giving defendant advice while leaving the choice, as he should, up to defendant.

As the exchange between the detective and defendant continued, defendant asked the hypothetical question about the mechanics of getting a lawyer "in here with me," to which the officer gave the response that was dispositive for the motion court. Without repeating the words used by defendant and the detective in their entirety, the context of the exchange, which immediately followed defendant's emphatic response that he was not asking for counsel,

---

addition, however, because the analysis of the trial court was not based upon credibility findings, the members of the Court have listened to the tape recording independently. *See, e.g., State v. Harris*, 181 *N.J.* 391, 415–16, 419, 859 *A.*2d 364 (2004) (explaining differing standards of review pertaining to findings of fact, conclusions of law, and mixed or "intertwined" reasoning). That audio recording revealed both pauses and inflections of tone and emphasis in the voices that make clear the meaning of the words that were used by the participants. The recording therefore bears upon the Court's analysis to the extent that it revealed things that the transcript cannot.

makes it clear that defendant's question was simply that, another question, rather than an ambiguous assertion of his right. The detective's immediate response, "that's on you" is no different from the statement "that's your call," *see Messino, supra,* 378 *N.J.Super.* at 573, 876 *A.*2d 818, and nothing in those words is inaccurate. In context, those words are no more than a reminder that the choice is defendant's, and not the detective's, to make; they are no different than had the detective responded by using the familiar phrase "that's up to you." Moreover, following a short pause, the detective reiterated that if defendant wanted an attorney, the questioning would stop and defendant would get a lawyer, and the detective followed that explanation by referring back to the rights that had just been read to defendant. The detective then reminded defendant further about his rights when he said "[i]f you want to stop at this time then we stop at this time."

As the United States Supreme Court has commented, the reality is that suspects do not, and cannot be expected to, "speak with the discrimination of an Oxford don." *Davis, supra,* 512 *U.S.* at 459, 114 *S.Ct.* at 2355, 129 *L.Ed.*2d at 371 (quoting and responding to concurring opinion of Justice Souter, *id.* at 476, 114 *S.Ct.* at 2364, 129 *L.Ed.*2d at 382). In point of fact, it is equally fair to say that interrogating officers, when engaged in communications with suspects, most often use language that is also more like that of the suspect than the precise and pristine elocutions of the aforesaid Oxford don. We recognize that because this is so, if the participants converse in vernacular or use colloquial expressions, as they did in this exchange, a minute parsing of the words used might yield an inaccurate picture of what was meant.

Nevertheless, this record, and in particular the inflections and tone revealed by the audio tape recording, demonstrate that defendant's statements to the police were not ambiguous assertions of his right to counsel. Instead, they were requests for advice from the police, followed by a hypothetical query about the mechanics relating to accessing counsel if he chose to assert a

right he plainly knew was within his power to assert. Although in responding to defendant's query about the mechanics of securing counsel, re-reading the portion of the *Miranda* warnings about the appointment of counsel might have been the more prudent course, on balance, we conclude that the detective's response was a fair recitation of the right to counsel and the right to have the interrogation cease. More to the point, because the detective was not obligated to give defendant advice about whether he should assert any of his rights, we cannot fault his choice of words as he sought to clarify defendant's requests while avoiding giving him the advice he was seeking.

In the final analysis, defendant's understanding of his rights was clear and complete; the words he chose were not an ambiguous assertion of any of those rights but instead were a series of requests for advice from the detective. The words the detective used in an effort to clarify whether defendant was attempting to assert any of his rights were neither inaccurate nor misleading. We therefore conclude, as did the Appellate Division, that defendant's waiver of his rights was knowing, voluntary and intelligent.

## IV.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO, HOENS and STERN (temporarily assigned)—7.

*Opposed*—None.