**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0308-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

FAUSTO RAMIRO SANTOS
CARILLO, a/k/a
FAUSTO SANTOS,
FAUSTO BALIVAR, and
BOLIVAR HERRERA,

    Defendant-Respondent.

_____

> Argued January 28, 2025 – Decided March 31, 2025
>
> Before Judges Smith, Chase and Vanek.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-11-0848.
>
> Milton S. Leibowitz, Assistant Prosecutor, argued the cause for appellant (William A. Daniel, Union County Prosecutor, attorney; Milton S. Leibowitz, of counsel and on the briefs).

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer N. Sellitti, Public Defender, attorney; Scott M. Welfel, of counsel and on the brief).

PER CURIAM

The State of New Jersey appeals from the trial court's order granting defendant's motion to suppress his statement to police while in custody. Based on our review of the record and prevailing law, we vacate and remand for further proceedings.

I.

Given the limited issue on appeal, we discern the salient facts from the record at the two-day suppression hearing, at which defendant and Union County Prosecutor's Office Detective Norma Foster testified.

Defendant's wife was found stabbed to death on July 27, 2003. Law enforcement identified defendant as a suspect for the murder, but defendant fled from the United States. In 2022, Defendant was extradited to the United States from Guatemala.

Immediately upon his arrival in the United States during the early hours of November 4, 2022, defendant was brought to the Union County Prosecutor's Office. All communication between Detective Foster, who is fluent in Spanish, and defendant occurred in Spanish. Defendant was advised of the charges

2

against him, which included murder, possession of a weapon, and possession of a weapon for an unlawful purpose.  Detective Foster ascertained defendant was fifty-six years old and had three years of education in engineering and business administration.

Prior to substantive questioning, Detective Foster presented defendant with a <u>Miranda</u>[1] rights waiver form written entirely in Spanish.  At defendant's option, she read the document aloud and reviewed the waiver form with him.

The reading of the <u>Miranda</u> rights and subsequent questioning were recorded on video (the video).  Only the portion of the video where Detective Foster read defendant his <u>Miranda</u> rights was played for the trial court at the suppression hearing.  Although it appears a Spanish interpreter was present in the courtroom, the interpreter's translation of the video to English does not appear in the certified transcript of the suppression hearing.

An uncertified Spanish to English translation of the entire video was moved into evidence, without objection.  The uncertified translation sets forth the following as to Detective Foster's review and reading of the <u>Miranda</u> rights waiver form with defendant:

---

[1]  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A-0308-24

FOSTER: Umm before I am able to continue to speak with you or if you have a question or have a conversation[,] I have to explain your rights ok.

. . . .

Anything that you say can and will be used against you in a court of law. Do you understand this?

DEFENDANT: Yes.

FOSTER: Write your answer and your initials. You have the right to talk to a lawyer and have him present while you are being questioned. Do you understand this right?

DEFENDANT: Yes, but I just want to say something there. Eh yes[,] like basically like I do not, I come from another, another country to here I do not know if you guys assign an attorney to me or I have to look for an attorney on my own?

FOSTER: So[,] part of this I have to explain I, I am only [r]eading, but this is Spanish.

DEFENDANT: Mm-hmm.

FOSTER: I cannot give you any type of legal advice okay[,] umm this is very simple if you want to have an attorney present that is your right. If you want to talk with me and then consult with an attorney that is something that you, but I cannot give you any type of-of like of advice.

DEFENDANT: Oh ok

FOSTER: You know that is in Spanish if you understand it.

A-0308-24

DEFENDANT: Mm-hmm.

FOSTER: That is something that you have to say if you, on your own.

DEFENDANT: Well yes.

FOSTER: So[,] you can put your answer and your initials. If you do not have money to hire a lawyer, one will be appointed to represent you before any questioning, if you wish. Do you understand this right?

DEFENDANT: Yes.

FOSTER: Put your answer and your initials. You can decide at any time to exercise these rights and not answer any questions or make any statements. Do you understand this right?

DEFENDANT: Yes.

FOSTER: Waiver of Rights. I have read this statement of my rights that appears above and I understand what my rights are. I am willing to make a statement and answer questions. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me. Is there anything about this that you, a word or something that you do not understand or anything that you want me to explain to you or do you understand? Or if you want to read it.

DEFENDANT: Ok then, what do I have to do here?

FOSTER: So[,] do you understand?

DEFENDANT: Yes.

5

A-0308-24

FOSTER:  Oh[,] but when you say that you agree umm do you want eh what to speak with the mask on?  If you want to remove the mask you can remove the mask, ok so if you understand your right you can sign here and write your name here, your full name and then you write it because like I cannot understand that, that one here like that, like that.

DEFENDANT:  Like it says here signature.

FOSTER:  Exactly.

DEFENDANT:  And then, it says right.

FOSTER:  No, eh you are correct.

DEFENDANT:  Here?

FOSTER:  Yes.

DEFENDANT:  Full name?

FOSTER:  Full name everything, everything your full name.  Do you wanna do both, you wanna sign it too or not?

At the end of this exchange, defendant signed the Miranda waiver form.  At the suppression hearing, Detective Foster translated the form from Spanish to English on the record, without objection.  A certified translation of the Miranda rights form written in Spanish was not provided to the trial court when the form was moved into evidence at the hearing.

6

After defendant signed the <u>Miranda</u> waiver acknowledging he understood his rights, Detective Foster questioned defendant about the events that took place on July 27, 2003, with defendant admitting to killing the victim and fleeing the United States immediately thereafter. During the statement, defendant admitted his willingness to cooperate with authorities stating, "[s]ince the first moment this happened I am willing to cooperate. I signed my extradition voluntarily without being forced by any, anyone over . . . there [] in Guatemala. I have been wanting to fix my situation." Defendant further stated, "I have to face the law and that's what I am here for[,] that is why I am here."

A Union County Grand Jury indicted defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1) (count one); and third-degree possession of a weapon, N.J.S.A. 2C:39-4(d) (count two). Defendant filed a pre-trial motion seeking to suppress his statement.

The trial court granted defendant's motion to suppress, issuing a written decision which stated in part:

> [d]efendant's initial statement that he was not from this country and was not sure if he had to obtain his own counsel or would be provided one amounted to ambiguous invocation of his right to counsel which required clarification by Det[ective] Foster. Det[ective] Foster did not adequately clarify the statement of . . . [d]efendant's rights, instead she added further confusion by stating although it was his right to

7

an attorney, he could speak with her and then consult an attorney. Although . . . [d]efendant was next informed that an attorney would be appointed to represent him before any questioning and that he could exercise his rights at any time and not answer any questions, that did not negate the misleading and confusing statement by Det[ective] Foster that [d]efendant could speak with her first before an attorney.

Overall, the [c]ourt finds that the exchange in this instant case is more analogous to the exchange in Gonzalez than Alston. Here, like Gonzalez, [d]efendant did not seek an opinion for advice on whether or not to have a lawyer present, but instead made an inquiry about the availability of counsel. Notably, Det[ective] Foster never directly asked [d]efendant whether he was seeking counsel, instead she added confusion by stating that [d]efendant could speak with her first then an attorney before continuing along with reading the other Miranda rights. Ultimately, while some clarification may have been given by reading further [d]efendant's rights, the [c]ourt finds that it was insufficient to fully determine whether [d]efendant was invoking his right to counsel before proceeding with law enforcement directed questioning.

In its written decision, the trial court did not analyze each of Detective Foster's statements to defendant while reading the Miranda rights, including the right to have an attorney present during questioning. Instead, the court referenced only the statement that followed, advising defendant could speak with an attorney after speaking with her. The trial court also did not analyze the

subsequent statement that if defendant did not have money to hire a lawyer, one would be appointed to represent him before any questioning, if he wished.

After the portion of the video where Detective Foster read the Miranda rights to defendant was played during the suppression hearing, the State moved the entire video and an uncertified translation transcript into evidence. Although the State requested that the trial court consider the entirety of the video and uncertified transcript, there is no statement in the trial court's written decision indicating the evidence was reviewed.

The State appealed, presenting the following issue for our consideration:

> DID THE COURT ERR IN GRANTING THE MOTION TO SUPRESS DEFENDANT'S STATEMENT GIVEN ON NOVEMBER 4, 2022?

We consider the sole issue based on the record before us.

## II.

Our review of a trial court's decision to suppress a defendant's custodial statement to police is limited. State v. Francisco, 471 N.J. Super. 386, 409 (App. Div. 2022). When reviewing a motion to suppress, we defer "to the trial court's factual findings that are supported by sufficient credible evidence in the record and [we] will not disturb those findings unless they are 'so clearly mistaken that

the interests of justice demand intervention and correction.'" State v. Rivas, 251 N.J. 132, 152 (2022) (quoting State v. S.S., 229 N.J. 360, 374 (2017)).

"Deference to a trial court's fact-findings is especially appropriate when the evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997). Since the trial court "'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (alteration in original) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

However, the trial court's legal conclusions are reviewed de novo. State v. Hubbard, 222 N.J. 249, 263 (2015). We are not bound by the trial court's legal conclusions regarding "the validity of the defendant's waiver of constitutional rights or the voluntariness of a confession . . . ." Rivas, 251 N.J. at 152.

## III.

The State argues the trial court erroneously suppressed defendant's statement, contending defendant did not ambiguously invoke his right to counsel but merely sought information on the process of whether an attorney would be appointed for him or whether he had to retain an attorney on his own should he

decide to have counsel. The State contends Detective Foster imparted the necessary information to defendant when she read him the remainder of the Miranda rights waiver form. The State argues Detective Foster was not required to ask clarifying questions to ascertain whether defendant wanted an attorney present before proceeding to substantive questioning because the waiver form provided the answer to his question.

Defendant argues the trial court correctly found defendant's question constituted an ambiguous invocation of his right to counsel requiring clarification by Detective Foster when he asked about the process for obtaining an attorney. Defendant argues Detective Foster failed to clarify whether defendant was invoking his right to counsel and, instead, responded to defendant's question with insufficient answers and proceeded to question defendant on the victim's death.

IV.

The Fifth Amendment to the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In New Jersey, the privilege against self-incrimination "is deeply rooted in this State's common law and codified in both

statute and an evidence rule."  State v. Andrews, 243 N.J. 447, 481 (2020) (quoting State v. Muhammad, 182 N.J. 551, 567 (2005)).

Miranda warnings serve as "safeguards to . . . counteract the inherent psychological pressures that might compel a person subject to custodial interrogation 'to speak where he would not otherwise do so freely.'"  Rivas, 251 N.J. at 153 (omission in original) (quoting State v. Wint, 236 N.J. 174, 193 (2018)).  If a suspect requests counsel during an interview, "the interrogation must cease until an attorney is present."  Miranda, 384 U.S. at 474.  Questioning may not resume "until counsel has been made available [or] unless the accused [] initiates further communication, exchanges, or conversations with the police."  State v. Chew, 150 N.J. 30, 61 (1997) (alterations in original) (quoting Edwards v. Arizona, 451 U.S. 477, 484-85 (1981)).

Under New Jersey law, even an ambiguous assertion of a defendant's right to counsel is sufficient to require police to cease questioning.[2]  State v. Gonzalez, 249 N.J. 612, 628-29 (2022) (defendant's statement "[b]ut what do I do about an attorney and everything?" was an ambiguous invocation of her right

---

[2] Under federal law, law enforcement must only cease questioning if a suspect's request for counsel is "unambiguous or unequivocal."  Davis v. United States, 512 U.S. 452, 461-62 (1994); see also State v. Alston, 204 N.J. 614, 619-22 (2011) (explaining the distinction between federal and state law).

to counsel requiring clarification from the interviewing detective). "[A] suspect need not be articulate, clear, or explicit in requesting counsel; any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel." Id. at 630 (quoting State v. Reed, 133 N.J. 237, 253 (1993)). "[A]n equivocal request for an attorney is to be interpreted in a light most favorable to the defendant." Chew, 150 N.J. at 63 (citing Reed, 133 N.J. at 253).

If a suspect makes an ambiguous assertion that is "susceptible to two different meanings, the interrogating officer must cease questioning and 'inquire of the suspect as to the correct interpretation.'" S.S., 229 N.J. at 382-83 (quoting State v. Johnson, 120 N.J. 263, 283 (1990)). When clarifying the meaning of a suspect's statement, an officer is limited to "neutral inquiries." Rivas, 251 N.J. at 154. Critically, these clarifying inquiries must not "operate to delay, confuse, or burden the suspect in [their] assertion of [their] rights." Alston, 204 N.J. at 623 (quoting Johnson, 120 N.J. at 283).

The Court has held that not every reference to an attorney by a suspect equates to an invocation of the right to counsel. See id. at 626 (finding the defendant's statements to police were not ambiguous assertions of his right to counsel but, rather, were requests for advice from police and a hypothetical query about the mechanics of accessing counsel if he chose to assert his right);

13

see also State v. Dorff, 468 N.J. Super. 633, 647 (App. Div. 2021) ("Not every reference to a lawyer . . . requires a halt to questioning."); State v. Messino, 378 N.J. Super. 559, 578 (App. Div. 2005) (defendant's statement, "[d]o you think I need a lawyer?" was not an ambiguous invocation of the right to counsel).

"[R]eviewing courts consider the totality of the circumstances, 'including, all of the suspect's words and conduct,'" to determine whether a mention of a lawyer invokes the right to counsel. Dorff, 468 N.J. Super. at 647 (quoting State v. Diaz-Bridges, 208 N.J. 544, 569 (2011)). When engaging in this analysis, trial courts must consider the defendant's "'age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved.'" State v. Nyhammer, 197 N.J. 383, 402 (2009) (quoting State v. Presha, 163 N.J. 304, 313 (2000)).

In determining a suspect's meaning, "a minute parsing of the words used," in isolation, may lead to an inaccurate conclusion. Alston, 204 N.J. at 627. A court must be mindful that "suspects do not, and cannot be expected to, 'speak with the discrimination of an Oxford don.'" Ibid. (quoting Davis, 512 U.S. at 459). The Court has recognized that "it is equally fair to say that interrogating officers, when engaged in communications with suspects, most often use

language that is also more like that of the suspect than the precise and pristine elocutions of [an] Oxford don." Id. at 627. In the search for meaning, a court may examine a sentence in the context of other statements made thereafter. Ibid.

V.

Our review on appeal is directly affected by the quality of the record developed below. Given this reality, we are constrained to vacate the suppression order and remand to the trial court to review the record, as supplemented consistent with this opinion, and to set forth findings of fact and conclusions of law comporting with Rule 1:7-4. Our analysis follows.

Rule 1:7-4 requires a trial court to "state clearly [its] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)); Curtis v. Finneran, 83 N.J. 563, 570 (1980). Without a clear and thorough statement of reasons, "we are left to conjecture as to what the judge may have had in mind." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990).

The trial court must determine whether defendant's motion to suppress should be granted. The court must accomplish this task based solely on the evidence adduced at the suppression hearing, including but not limited to: Detective Foster's testimony, the video, the uncertified translation of the video from Spanish to English, and the Spanish-language Miranda waiver form.

There is no indication in the court's written decision that the entirety of the uncertified transcript and video were reviewed by the trial court prior to rendering its decision, despite both items being moved into evidence coupled with the State's unobjected-to request for the court to consider them. It is also unclear whether the trial court considered Detective Foster's testimony, as the trial court's written decision makes no reference to this evidence.

The record further shows that a portion of the video addressing the Miranda rights waiver was played for the court during the suppression hearing. However, the suppression hearing transcript does not include an English translation of the video by the court interpreter. Nor does the record include a certified Spanish to English translation of the video. Without an official translation, we lack the ability to make a substantive determination on appeal. On remand, the State shall supplement the record before the trial court with a

16

certified translation of the entire video on an expedited basis, to allow the trial court to fully consider the issues.

We note the trial court's written statement of reasons is devoid of credibility or factual findings relating to Detective Foster's testimony. The credibility determinations are significant since the only Miranda waiver form in evidence is written in Spanish, with no certified written translation, and only Detective Foster's translation of the document at the suppression hearing is provided on appeal.[3] The absence of credibility findings as to Detective Foster

---

[3] Pursuant to New Jersey's Language Access Plan:

> Unless otherwise permitted by the court, all evidentiary documents are to be presented in English and all non-English documents intended to be introduced into evidence must be accompanied by a Statement/Certificate of translation [pursuant to Section 4.1.2]. In the alternative and in limited circumstances, the court may consider permitting sight translation on the record of non-English documents. If the intended evidence is in the form of a non-English audio/video recording or electronic message, a transcription in the original language should accompany the translation. All issues regarding the admission of evidence remain in the sound discretion of the court, as permitted by [N.J.R.E. 611].
>
> [Admin. Off. of the Cts., Admin. Directive #10-22, New Jersey Judiciary Language Access Plan, § 4.4 (Sept. 30, 2022).]

A-0308-24

extends to her qualifications to translate the document, when the record shows a Spanish interpreter was in the courtroom at the suppression hearing.[4] The trial court shall, exercising its sound discretion, determine whether an English translation of the <u>Miranda</u> waiver form is necessary to consider the issues on remand and, if so, shall require the State to expeditiously provide a certified translation of the form.

Finally, the trial court could have engaged in a more fulsome totality of the circumstances analysis, taking into account facts including but not limited to: defendant's age; education; business acumen; and the detectives' interaction with defendant at headquarters prior to the video recording. These findings inform an evaluation of defendant's mental and physical state, an evaluation clearly tethered to a thorough totality of the circumstances analysis.

Within forty-five days of the date of this opinion, the trial court shall set forth a statement of reasons as to its credibility determinations, factual findings, and conclusions of law comporting with <u>Rule</u> 1:7-4. We express no opinion on the merits of the parties' claims or defenses but identify them solely to illustrate

---

[4] Translation or interpretation between languages would more appropriately be done by an interpreter qualified under N.J.R.E. 604, who must be neutral and "have no bias for or against any party or witness," Biunno, Weissbard & Zegas, <u>Current N.J. Rules of Evidence</u>, cmt. on N.J.R.E. 604 (2023).

that, absent a more complete set of findings, we "are left to conjecture as to what the judge may have had in mind" and lack the ability to engage in meaningful appellate review. Salch, 240 N.J. Super. at 443; see also Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 302 (App. Div. 2018) (noting that Rule 1:7-4's "requirements are unambiguous").

Any arguments not addressed in this decision are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

The order granting the suppression motion is vacated and remanded to the trial court for an amended decision based on the supplemented record within forty-five days. We retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division