**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0308-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

FAUSTO RAMIRO SANTOS
CARILLO, a/k/a
FAUSTO SANTOS,
FAUSTO BALIVAR, and
BOLIVAR HERRERA,

    Defendant-Respondent.

_____

Argued January 28, 2025 – Remanded March 31, 2025
Resubmitted July 28, 2025 – Decided August 21, 2025

Before Judges Smith, Chase and Vanek.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-11-0848.

Milton S. Leibowitz, Assistant Prosecutor, argued the cause for appellant (William A. Daniel, Union County Prosecutor, attorney; Milton S. Leibowitz, of counsel and on the briefs).

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer N. Sellitti, Public Defender, attorney; Scott M. Welfel, of counsel and on the briefs).

PER CURIAM

The State of New Jersey appealed the trial court's order granting defendant's motion to suppress his statement to police while in custody. We remanded this matter to the Law Division to set forth its findings of fact and conclusions of law pursuant to Rule 1:7-4 after considering the entirety of the motion record before it, as supplemented with a certified Spanish to English translation of defendant's recorded statement.[1] See State v. Santos Carillo, No. A-0308-24 (App. Div. March 31, 2025). Without a complete record, we lacked the ability to render a substantive decision on the issue of whether the defendant's statement was properly suppressed under Miranda.[2]

Based on our review of the record on remand, along with the parties' supplemental briefs and prevailing law, we affirm the trial court's conclusion that the question defendant posed to Detective Foster during the reading of the

---

[1] We also permitted the trial court to direct the State to supplement the record with a certified Spanish to English translation of the Miranda rights waiver form written in Spanish. The trial court does not appear to have required submission of this document.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

<u>Miranda</u> waiver form constituted an ambiguous request for counsel, requiring clarification. Since the detective did not clarify whether defendant's question constituted a request for counsel and, instead, proceeded to read the remainder of the <u>Miranda</u> waiver form before moving to substantive questioning, the trial court properly granted defendant's motion to suppress his recorded statement.

I.

The salient facts are fully described in our initial opinion. We supplement that factual predicate only with the additional evidence considered by the trial court on remand germane to our decision today.

The certified Spanish to English translation of the detective's interaction with defendant as to the reading of the <u>Miranda</u> rights waiver form begins with the following colloquy:

> FOSTER: Umm before I can continue to speak with you or if you have a question or have a conversation, I have to explain your rights ok.
>
> . . . .
>
> Anything that you say can and will be used against you in front of a court of law. Do you understand this?
>
> DEFENDANT: Yes.
>
> FOSTER: Write your answer and your initials. You have the right to talk to a lawyer and have him present

while you are being questioned.  Do you understand this right?

DEFENDANT:  Yes, but I just want to say something there.  Eh yes[,] like basically like I do not, I come from another, another country to here I do not know if you guys assign an attorney to me or I have to look for an attorney on my own?

FOSTER:  So[,] part of this I have to explain I, I am only [r]eading, but this is Spanish.

DEFENDANT:  Mm-hmm.

FOSTER:  I cannot give you any type of legal notice ok[,] umm this is very simple if you want to have an attorney present that is your right.  If you want to talk with me and then consult with an attorney that is something that you, but I cannot give you any type of-of like of [advice].

. . . .

The detective did not ask any questions to clarify whether defendant was requesting an attorney when he posed the question detailed above.

After defendant signed the <u>Miranda</u> waiver acknowledging he understood his rights, the detective questioned defendant about the events that took place on July 27, 2003.  Defendant admitted killing the victim and fleeing the United States immediately thereafter.  A Union County Grand Jury then indicted defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1) (count one); and third-degree possession of a weapon, N.J.S.A. 2C:39-4(d) (count two).

A-0308-24

Defendant filed a pre-trial motion seeking to suppress his statement, which the trial court granted.

On remand, the trial court considered the certified translation of defendant's recorded statement and held a hearing during which the interpreter clarified certain words used by the detective that he asserted could not be translated from Spanish to English.

The trial court's June 24, 2025, thirty-seven-page, written decision post-remand details its findings based on the supplemental evidence reviewed and articulates credibility findings as to the detective's suppression hearing testimony. The trial court found defendant's non-verbal cues during his recorded statement evidenced that he was asking a question about obtaining an attorney during the reading of the Miranda rights. Specifically, when the detective began reading the third Miranda right regarding the presence of an attorney, defendant lifted his hand with all five fingers extended, as if signaling the detective to stop reading. In addition, defendant raised the pitch of his voice when he asked, "if you guys assign an attorney to me or I have to look for an attorney on my own," indicating that he was posing this as a question seeking clarification on how to obtain counsel. The trial court found these actions—his hand gesture to interrupt

the detective and the upward inflection of his voice—evidenced defendant was inquiring about his right to counsel at that moment.

The trial court thoroughly evaluated the evidence along with prevailing law, and found defendant's statement, "I come from another, another country to here I do not know if you guys assign an attorney to me or I have to look for an attorney on my own," to be an ambiguous invocation of his right to counsel which required clarification. Finding that the detective did not seek to clarify the defendant's intent in asking the question, the trial court suppressed defendant's recorded statement. Under a separate analysis, the trial court also found defendant's waiver of Miranda rights was not knowing, voluntary, or intelligent.

Accordingly, on remand the trial court again granted defendant's motion to suppress his recorded statement.

II.

Based on our de novo review of the supplemented record and the applicable law discussed in our initial decision, we conclude that defendant's question to Detective Foster during the reading of his Miranda rights was an ambiguous request for counsel requiring clarification to determine whether defendant wanted an attorney present prior to substantive questioning. Since

6

defendant argues he invoked the right to counsel through his question and the detective did not clarify whether defendant sought an attorney at that juncture, we discern no error in the trial court's suppression of defendant's recorded statement.

As we previously observed in our initial opinion, even an ambiguous assertion of a defendant's right to counsel is sufficient to require law enforcement to cease questioning under New Jersey law. State v. Gonzalez, 249 N.J. 612, 628-29 (2022) (defendant's statement "[b]ut what do I do about an attorney and everything?" was an ambiguous invocation of her right to counsel requiring clarification from the interviewing detective). "[A] suspect need not be articulate, clear, or explicit in requesting counsel; any indication of a desire for counsel, however ambiguous, will trigger entitlement to counsel." Id. at 630 (quoting State v. Reed, 133 N.J. 237, 253 (1993)). "[A]n equivocal request for an attorney is to be interpreted in a light most favorable to the defendant." State v. Chew, 150 N.J. 30, 63 (1997) (citing Reed, 133 N.J. at 253). Once there is an ambiguous invocation of the right to counsel, the interviewing police officer is required to seek clarification. Ibid. ("When a suspect makes a statement that arguably amounts to an assertion of Miranda rights and the interrogating agent recognizes that the statement is susceptible to that construction, questioning

should cease and the police should inquire of the suspect about the correct interpretation of the statement.").

In Alston, the Court held that the defendant's query "[s]hould I not have a lawyer in here with me?" need not be suppressed since it was a request for advice, rather than invocation of the right to counsel. State v. Alston, 204 N.J. 614, 619-22 (2011). The Court also found the detective's succinct, clarifying question, "[y]ou want a lawyer?" to be proper. Id. at 618. No such clarifying question was posed to defendant here.

Conversely, in Gonzalez, the Court found defendant's inquiry of the interviewing officer, "[b]ut now what do I do about an attorney and everything?" amounted to an ambiguous invocation of the right to counsel that required the detective to cease questioning and ask clarifying questions. 249 N.J. at 622. The Gonzalez Court evaluated the defendant's "vague query," concluded it was unclear as to whether it was a present or future request for counsel and determined it was "arguably" a request for an attorney, requiring suppression of all subsequent statements made by the defendant. Id. at 631-32.

We decline to disturb the trial court's factual findings and resultant conclusion that defendant's statement was a question, based on his manner of speaking and gestures as depicted in the video. Defendant's question—"I do not

A-0308-24

know if you guys assign an attorney to me or I have to look for an attorney on my own?"—was articulated in the present tense, indicating uncertainty about how to obtain legal representation at that moment. Thus, under Gonzalez, we see no error in the trial court's conclusion that defendant's query was an ambiguous request for an attorney, either to be provided by the State or secured independently by him, rather than merely seeking advice about the process as presented in Alston.

Interpreted in the light most favorable to defendant, his ambiguous question required the detective to clarify whether he was asking for an attorney at that time. The detective's recitation of the remaining Miranda rights in this case did not clarify whether defendant was asking for counsel before making any statement to the police. Although the trial court found the detective's testimony to be credible, her response, "I am only [r]eading, but this is Spanish," before continuing with the rest of the Miranda rights, did not attempt to clarify defendant's statement.

In light of our conclusion that defendant's statement was properly suppressed due to the detective's failure to clarify whether defendant's ambiguous question was an invocation of the right to counsel, we need not address the trial judge's other findings as to the voluntariness of the Miranda

9

waiver.[3]  Accordingly, any arguments not addressed in this decision are without

sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[3]  In the event we were to reach the trial court's alternative grounds for granting defendant's motion to suppress, we note the trial court relied on evidence outside the scope of our remand.  Although the trial court struck defendant's suppression hearing testimony from the record based on his refusal to submit to cross-examination, on remand the trial court relied on this same testimony to conclude defendant's Miranda rights waiver was not voluntary, knowing, and intelligent. Thus, the factual predicate for a portion of the trial court's conclusions was grounded in certain testimony that did not comport with due process safeguards. Other portions of the trial court's analysis on the alternative grounds were not tethered to facts established in the suppression hearing record, to which the trial court was confined on remand.

A-0308-24