**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1306-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MISEAL LOPEZ,

    Defendant-Appellant.

_____

> Submitted September 23, 2025 – Decided October 9, 2025
>
> Before Judges Perez Friscia and Vinci.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 13-04-1368.
>
> Jennifer N. Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).
>
> Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Miseal Lopez appeals from the November 9, 2023 Law

Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant contends an evidentiary hearing is warranted as he has demonstrated ineffective assistance of counsel (IAC) because his motion counsel failed to specifically argue that defendant had invoked his right to remain silent in the motion to suppress his custodial statement. Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

On March 17, 2012, defendant and his brother, co-defendant Alexander Lopez, went to a home in Camden planning to commit an armed robbery. During the robbery, defendant shot three men, killing two and injuring another.

On May 22, John Hunsinger, a Camden County Prosecutor's Office (CCPO) detective, interviewed defendant with detective Angel Nieves also present. Defendant was eighteen years of age at the time and advised Hunsinger that he could read and write English. Hunsinger read defendant his Miranda[1] rights, which defendant acknowledged verbally and in writing that he understood. Defendant also confirmed he understood he could "stop the questioning" at any time. After defendant signed the Miranda rights form and

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1306-23

the interview progressed, Hunsinger also instructed defendant that, "if you don't understand something I'm saying . . . ask me." Defendant again responded that he understood.

Hunsinger explained to defendant that the CCPO had obtained incriminating evidence. Upon hearing that witnesses had "positively identified [him] as the shooter[,]" defendant stood up and stated, "You can cut it short - you can just lock me up right now - do what you want." Hunsinger responded, "I don't want to do that to you." Defendant then made a comment about wearing "a red suit," apparently referencing what prisoners wear in jail. Hunsinger replied, "Sit down . . . . If I wanted to . . . I got these warrants right here." After defendant stated that he "can't do nothing," Hunsinger told him, "You . . . can do something" and advised defendant that "[i]f [he wanted] to help [himself]," he should tell the detectives "what happened." Defendant then admitted to shooting the victims. He stated, "I killed them . . . . I shot them. Yeah, I shot them."

On April 24, 2013, a Camden County grand jury charged defendant with: first-degree murder, N.J.S.A. 2C:11-3(a)(1) to (2) (counts one and two); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (counts three and four); second-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count five); first-degree attempted

3

murder, N.J.S.A. 2C:5-1, 2C:11-3(a)(1) to (2) (count six); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count seven); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (counts eight and eleven); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count nine); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count ten); first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a)(1) to (2) (count fourteen); and second-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:18-2 (count fifteen). A co-defendant was also charged in various counts of the indictment.

Defendant's motion counsel thereafter moved to suppress defendant's statements, arguing the detectives violated his Miranda rights because defendant lacked the capacity to voluntarily waive his rights, and defendant's confession was the product of the detectives' coercion. The motion court held a three-day evidentiary hearing, where an expert testified on defendant's behalf that defendant suffered from "a historical diagnosis of [a] learning disability" and an "intellectual deficit." On April 21, 2016, the motion court denied defendant's motion.

On May 6, defendant pleaded guilty to the two felony-murder counts. Defendant admitted entering the Camden residence to commit a robbery and

4

fatally shooting two people. As part of the plea colloquy, defendant answered motion counsel's questions establishing the factual basis for his guilty plea. In accordance with his plea agreement, the court sentenced defendant on June 30 to an aggregate thirty-year prison term, with a thirty-year period of parole ineligibility on both counts. Defendant did not file a direct appeal.

In June 2021, defendant filed a self-represented PCR petition, and PCR counsel thereafter filed a supplemental brief. Defendant argued motion counsel was ineffective for failing to move to suppress defendant's statements under alternative theories. Defendant specifically alleged the detectives had coerced his statement, and he had invoked his right to remain silent. He asserted that he "exercise[d] his constitutional right to terminate the interrogation by telling" the detectives to cut the interview short. Further, defendant argued he "would have in all likelihood elected to go to trial, especially in view of the eyewitnesses' contradictory statements and reluctant identifications."

On November 9, 2023, the PCR court issued an order accompanied by a thorough and well-reasoned twenty-three-page written decision denying defendant's PCR petition without an evidentiary hearing. The court determined defendant failed to satisfy the two-prong Strickland test, as adopted by our

Supreme Court in <u>Fritz</u>.[2]  The court denied defendant's PCR petition because he: made claims that were "belied by the record"; provided only "bald assertions" of IAC; had "not invoke[d] his right to remain silent but, rather, was indicating that he was ready to admit his role in the two homicides"; and offered "no evidence . . . to suggest that [he] would have insisted on going to trial."

On appeal, defendant argues a single point for our consideration.

> [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING OR RELIEF ON HIS CLAIM THAT HIS ATTORNEY RENDERED [IAC] BY FAILING TO MOVE TO SUPPRESS HIS PRETRIAL STATEMENT BECAUSE HE INVOKED HIS RIGHT TO REMAIN SILENT.

II.

When a PCR court does not hold an evidentiary hearing, our standard of review is de novo as to both the court's factual inferences drawn from the record and the court's legal conclusions.  <u>State v. Aburoumi</u>, 464 N.J. Super. 326, 338-39 (App. Div. 2020).  A petitioner is not automatically entitled to an evidentiary hearing by simply raising a PCR claim.  <u>State v. Cummings</u>, 321 N.J. Super. 154, 170 (App. Div. 1999).

---

[2]  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987).

A-1306-23

When petitioning for PCR, the defendant must establish, "by a preponderance of the credible evidence," entitlement to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). An evidentiary hearing should only be conducted if there "are material issues of disputed fact" regarding entitlement to PCR "that cannot be resolved by reference to the existing record." State v. Porter, 216 N.J. 343, 354 (2013) (quoting R. 3:22-10(b)). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Id. at 355 (quoting R. 3:22-10(b)). It is clear, to establish a prima facie IAC claim warranting an evidentiary hearing, "a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel," but must instead "allege facts sufficient to demonstrate counsel's alleged substandard performance." Porter, 216 N.J. at 355 (quoting Cummings, 321 N.J. Super. at 170).

To succeed on an IAC claim, a defendant must satisfy both prongs of the Strickland test. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." Strickland, 466 U.S. at 687. The PCR court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under the second prong of the Strickland test, the defendant must show "the deficient performance prejudiced the defense." Id. at 687. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome of the proceeding." Id. at 693. Moreover, courts must "make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" State v. Hernandez-Peralta, 261 N.J. 231, 251 (2025) (quoting State v. Pierre, 223 N.J. 560, 579 (2015)).

"In a challenge to a conviction arising from a guilty plea, the petitioner may satisfy the prejudice prong by showing 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted

on going to trial.'" State v. O'Donnell, 435 N.J. Super. 351, 369-70 (App. Div. 2014) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "In the PCR context, to obtain relief from a conviction following a plea, 'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" Id. at 371 (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). "Generally, representations made by a defendant at plea hearings concerning the voluntariness of the decision to plead, as well as any findings made by the trial court when accepting the plea, constitute a 'formidable barrier' which defendant must overcome." State v. Simon, 161 N.J. 416, 444 (1999) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). This is because "[s]olemn declarations in open court carry a strong presumption of verity." Ibid. (alteration in original) (quoting Blackledge, 431 U.S. at 74).

III.

Defendant contends the PCR court erred by denying his PCR petition without an evidentiary hearing because he sufficiently showed that motion counsel was ineffective for failing to raise that defendant had invoked his right to remain silent under the Fifth Amendment. After our de novo review of defendant's statements and argument, we are unpersuaded.

We first note, as the PCR court correctly observed, that defendant's PCR petition cannot serve as "a substitute for appeal from conviction." R. 3:22-3. Undisputedly, defendant did not file a direct appeal challenging the motion court's denial of his motion to suppress. Defendant seemingly recasts his dissatisfaction with the motion court's denial of his suppression motion as a PCR challenge undergirded by counsel's strategic motion theories. While the court questioned defendant's failure to directly appeal the motion "court's denial of his motion to suppress," it nevertheless appropriately considered the merits of defendant's argument that motion counsel should have argued an alternate suppression theory.

Turning to defendant's IAC contentions, we review the basic principles governing Miranda rights. The Fifth Amendment to the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In New Jersey, the privilege against self-incrimination "is deeply rooted in this State's common law and codified in both statute and an evidence rule." State v. Andrews, 243 N.J. 447, 481 (2020) (quoting State v. Muhammad, 182 N.J. 551, 567 (2005)). Miranda warnings serve as "safeguards to . . . counteract the inherent psychological pressures that might compel a person subject to custodial

interrogation 'to speak where he would not otherwise do so freely.'"  State v. Rivas, 251 N.J. 132, 153 (2022) (quoting State v. Wint, 236 N.J. 174, 193 (2018)); see also State v. Amang, 481 N.J. Super. 355, 378 (App. Div. 2025) ("Miranda safeguards the right against self-incrimination by requiring that custodial interrogations are prefaced with specific warnings.").

"The administration of Miranda warnings ensures that a defendant's right against self-incrimination is protected in the inherently coercive atmosphere of custodial interrogation."  State v. A.M., 237 N.J. 384, 397 (2019).  To that end, a person subject to custodial interrogation "must be adequately and effectively apprised of his [or her] rights."  State v. Bullock, 253 N.J. 512, 532 (2023) (quoting Miranda, 384 U.S. at 467).  "A defendant may waive any or all of those rights; however, that waiver must be 'voluntary, knowing[,] and intelligent.'"  State v. Hubbard, 222 N.J. 249, 265 (2015) (quoting State v. Hreha, 217 N.J. 368, 382 (2014)).  "[I]n situations where 'a suspect's statement "arguably" amount[s] to an assertion of Miranda rights,'" officers must seek further clarification.  State v. Gonzalez, 249 N.J. 612, 630 (2022) (alteration in original) (quoting State v. Alston, 204 N.J. 614, 621 (2011)).  "If the police are reasonably uncertain whether the person is asserting the right to remain silent, they may

only ask questions directed to resolving that uncertainty." State v. Burno-Taylor, 400 N.J. Super. 581, 590 (App. Div. 2008).

The PCR court considered these principles and soundly found defendant's comments to the detectives that "[y]ou can cut it short - you can just lock me up right now - do what you want," followed by his statement that "[y]ou wear a red suit" in jail, plainly indicated defendant had recognized that his continued denial of his involvement in the shooting was futile, and he therefore chose to confess. A review of defendant's comments in context supports this conclusion. Defendant made these comments in response to Hunsinger's assertion that eyewitnesses had identified defendant as the shooter, and his parents would be told "what happened."

Relevantly, defendant made similar comments acknowledging the inevitability of his conviction for the crimes, including: "Oh God, I clapped them - I shot them n[***]ers[,] c'mon now take me to jail"; "just get me my suit or whatever and take me to the county"; "hell[,] first degree murder - I can't get away with that sh[*]t[,] nobody can get away with that sh[*]t"; and "not even a f[**]king million dollar lawyer could beat this sh[*]t." Defendant's statements reflect his understanding of the situation, the likelihood that there was incriminating evidence he committed the murders, and the probability there was

12

sufficient evidence to support a conviction. We agree with the PCR court that defendant's comments cannot fairly be interpreted as an invocation of his right to remain silent, even when viewed in the light most favorable to him.

Further, even if defendant's remarks were deemed an invocation of his right to remain silent, defendant nevertheless failed under Strickland to make a prima facie IAC showing that motion counsel was deficient for failing to present alternative theories for suppressing defendant's confession. Defendant premised his filed suppression motion on alleged coercion and involuntariness, arguing he lacked the capacity to understand his Miranda rights, and therefore, could not have waived them. In his PCR petition, defendant acknowledged that motion counsel "filed a suppression motion and retained . . . a psychiatric expert[], on the issue of defendant's waiver of his Miranda rights." At the suppression hearing, defendant's expert testified that defendant did not understand his rights. In his review of defendant's statement, defendant's expert specifically found no indication defendant had "invoke[d] his rights," and "[t]here was nothing like that."

Defendant's contention that motion counsel was deficient for failing to raise the alternative theory that he invoked his right to remain silent ignores that such an argument directly contradicts motion counsel's theory that defendant's

A-1306-23

Miranda waiver was involuntary. Arguing defendant invoked his right to remain silent would have substantially undermined his expert's opinion. Therefore, we agree with the PCR court that defendant's contention lacks merit and that defendant's "mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1306-23